XUE & ASSOCIATES, P.C.
Benjamin B. Xue, Esq.
Kevin K. Yam, Esq.
Ricky Liang, Esq.
1001 Avenue of the Americas
11th Floor
New York, New York 10018
Tel.: 212-219-2275
Fax: 212-219-2276
*Attorneys for Defendants*
*Yellowstone Transportation, Inc.,*
*Yes Car Services, Inc., and*
*April 2012 Transportation, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| XIDONG GAO, DESHENG ZHANG, BIN LI, YANG WANG and HONGJUN HOU, on behalf of themselves and others similarly situated, | Case No.: 15-cv-7439-LWD-AYS |
| Plaintiffs, | **DECLARATION OF JULIE WANG** |
| -against- | |
| YELLOWSTONE TRANSPORTATION, INC. d/b/a Yes Car Services; YES CAR SERVICES, INC. d/b/a Yes Car Services; APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services; TONY LAW, and JOHN 01-05 DOE's, | |
| Defendants. | |

_____

I, JULIE WANG, pursuant to 28 U.S.C. § 1746, declare as follows:

      1.    I am the manager of the named defendant Yellowstone Transportation Inc. in the

above-captioned action. I submit this declaration in support of Defendants' Yellowstone

Transportation, Inc. ("Yellowstone"), Yes Car Services, Inc. ("Yes Car Services"), and April

2012 Transportation, Inc. ("April 2012") (collectively referred to as the "Defendants") motion to

dismiss, pursuant to Rule 12(b)(6), Plaintiffs' Xidong Gao, Desheng Zhang, Bin Li, Yang Wang,

and Hongjun Hou (collectively referred to as "Plaintiffs") amended complaint. The facts and information stated herein are based on my personal knowledge. A true and exact copy of Plaintiffs' First Amended Complaint is annexed hereto as **Exhibit A**.

2.      Yellowstone operates as transportation service dispatcher within the New York City metropolitan area who works with independent contractors that wish to retain the services of Yellowstone to receive dispatches from potential customers seeking transportation services.

3.      Yellowstone operates solely as a transportation service dispatcher that seeks to obtain customers requesting transportation services and then provides the option to independent contractors to accept or refuse these requests from the potential customer.

4.      As such, Yellowstone does not employ any drivers nor does it own or maintain any vehicles.

5.      The working relationship between Yellowstone and its independent contractors is solely of Yellowstone dispatching customers requesting transportation services.

6.      Yellowstone dispatches customer requests to independent contractors using software called "J Limo Software". J Limo Software can be installed on any Android smartphone.

7.      When an independent contractor is ready to do business and provide transportation services, he/she turns on the J Limo Software on his/her phone which will notify Yellowstone that the independent contractor is ready to receive dispatches from Yellowstone.

8.      Once the J Limo Software is turned on, Yellowstone will dispatch customer requests to any independent contractor within the area of the customer requesting services. This is done on a first-come, first-serve basis. For example, if an independent contractor was the fifth

person to enter a certain area, that independent contractor will be the fifth person to receive a dispatch in that area.

9.     This allows absolute freedom for independent contractors working with Yellowstone and allows them flexibility in the scheduling of their personal life. For example, some independent contractors with children like to first drop off their children at school in their own vehicle, and then turn on the J Limo Software to begin providing transportation services right after dropping off their children. Once it is time to pick up their children from school, the independent contractors will turn off the J Limo Software, signaling to Yellowstone that he/she will no longer be providing transportation services in order to pick up their children.

10.     Unlike other transportation service dispatch companies, Yellowstone does not designate or control its independent contractors to wait in a certain area of New York City to receive dispatches. Independent contractors working with Yellowstone can turn on the J Limo Software wherever they are and Yellowstone will then dispatch any customer requests in that area to that independent contractor.

11.     Unlike other transportation service dispatch companies, Yellowstone does not require its independent contractors to wear a certain uniform or dress in a certain manner.

12.     Before any independent contractor enters into a working relationship with Yellowstone, they must first sign and agree to an "Independent Contractor Services Agreement" (the "Agreement") that expressly states that he or she is an independent contractor and will not be considered an employee, partner, joint venture or agent of Yellowstone for any purpose whatsoever. A true and exact copy of Plaintiff Xidong Gao's Independent Contractor Services Agreement and Sponsor Agreement is annexed hereto as **Exhibit B**.

13.     The Agreement specifies the services the independent contractor will provide, which includes notifying Yellowstone that he/she is ready, willing, and able to receive transportation service requests from customers, and notifying Yellowstone whether he/she will be exercising the option to accept or refuse any transportation request. See **Exhibit B**.

14.     In consideration of receiving dispatches from potential customers seeking transportation services, independent contractors pay a single weekly fee of $165.00 or $180.00, depending on the vehicle size, to Yellowstone. See **Exhibit B**.

15.     This is the only fee that is paid by independent contractors in consideration for receiving dispatches from Yellowstone. If an independent contractor accepts one dispatch in any given week, that independent contractor must pay the weekly fee. However, if an independent contractor decides not to provide their services in any given week, that independent contractor is excused from paying the weekly fee.

16.     An independent contractor working with Yellowstone may accept as many dispatches as he/she desires in a given week and work as much as he/she desires but pays the same weekly flat fee.

17.     Yellowstone does not share in the fare that the customer pays to the independent contractor for the transportation service. The independent contractor receives the total amount of the fare as revenue.

18.     Yellowstone generates revenue solely from the weekly fee paid by its independent contractors in consideration for dispatching customers.

19.     The Agreement specifically states the independent contractor has the right and option to refuse or accept any transportation request from a customer without incurring any penalty or consequence. It further states that the independent contractor retains the right to

provide transportation services for other dispatch service companies whenever he/she desires. See **Exhibit B**.

20.     The Agreement provides that the independent contractor has the right to set his/her own schedule and he/she has no obligation to provide his/her services on any hours or days and may cease providing services at any time. It further provides that the independent contractor may provide his/her services in his/her own matter, and that Yellowstone has no right to control and direct the details of the way the independent contractor provides services. See **Exhibit B**.

21.     By entering into an independent contractor relationship with Yellowstone, the independent contractors must first obviously own their own vehicle and naturally incur and maintain all expenses in the operation and use of their vehicle, such as the cost of gas and repairs, just like any other ordinary expenses incurred by businesses in the course of operation.

22.     Independent contractors requesting to work with Yellowstone must also enter into a "Sponsor Agreement" with Yellowstone, which also provides that the independent contractor agrees and acknowledges he or she is an independent contractor and will not be considered an employee, partner, joint venture or agent of Yellowstone. See **Exhibit B**.

23.     On May 8, 2014, Nation Wide Travel LLC, entered into an independent contractor relationship with Yellowstone to provide transportation services by agreeing and entering into the Agreement and Sponsor Agreement. Plaintiff Bin Li, as its President, signed on behalf of Nation Wide Travel LLC. A copy of the Agreement and Sponsor Agreement was translated into Chinese, which was also signed by Plaintiff Bin Li. A true and exact copy of Plaintiff Bin Li's Independent Contractor Services Agreement and Sponsor Agreement is annexed hereto as **Exhibit C**.

24.     On June 13, 2013, Pingan393 Express Inc., entered into an independent contractor relationship with Yellowstone to provide transportation services by agreeing and entering into the Agreement and Sponsor Agreement. Plaintiff Hongjun Hou, as its President, signed on behalf of Pingan393 Express Inc. A copy of the Agreement and Sponsor Agreement was translated into Chinese, which was also signed by Plaintiff Hongjun Hou. A true and exact copy of Plaintiff Hongjun Hou's Independent Contractor Services Agreement and Sponsor Agreement is annexed hereto as **Exhibit D**.

25.     On July 1, 2013, Gaoxing Express Inc., entered into an independent contractor relationship with Yellowstone to provide transportation services by agreeing and entering into the Agreement and Sponsor Agreement. Plaintiff Xidong Gao, as its President, signed on behalf of Gaoxing Express Inc. A copy of the Agreement and Sponsor Agreement was translated into Chinese, which was also signed by Plaintiff Xidong Gao. See **Exhibit B**.

26.     On January 22, 2013, 229Yang Express Inc., entered into an independent contractor relationship with Yellowstone to provide transportation services by agreeing and entering into the Agreement and Sponsor Agreement. Plaintiff Yang Wang, as its President, signed on behalf of 229Yang Express Inc. A copy of the Agreement and Sponsor Agreement was translated into Chinese, which was also signed by Plaintiff Yang Wang. A true and exact copy of Plaintiff Yang Wang's Independent Contractor Services Agreement and Sponsor Agreement is annexed hereto as **Exhibit E**.

27.     On August 12, 2009, Wei Dong Gao, entered into an independent contractor relationship with Sunline Transportation Inc. to provide transportation services by agreeing and entering into the Agreement and Sponsor Agreement. Sunline Transportation Inc. was a transportation service dispatch company that was acquired by Yellowstone on or about 2012. A

copy of the Agreement and Sponsor Agreement was translated into Chinese, which was also signed by Wei Dong Gao. On November 8, 2013, the Agreement and Sponsor Agreement entered into by Wei Dong Gao was assigned to Plaintiff Desheng Zhang. A true and exact copy of Plaintiff Desheng Zhang's Independent Contractor Services Agreement and Sponsor Agreement is annexed hereto as **Exhibit F**.

28. As provided in the Agreement, Yellowstone has never employed Plaintiffs but only retained their services as independent contractors.

29. Yellowstone does not supervise or control the degree or manner in how Plaintiffs provides their services to customers but solely dispatches customer requests for services to any independent contractors willing to accept the trip request.

30. As the Agreement defines the business relationship between Yellowstone and Plaintiffs, anything not stated in the Agreement is not required of the Plaintiffs. Therefore, Plaintiffs present the transportation services they provide in any fashion and manner they wish.

31. Plaintiffs always have the option to refuse any trip request and may do so without incurring a penalty or consequence.

32. Plaintiffs all work at their own convenience and on their own schedule. Plaintiffs notify Yellowstone when they are available, via the J Limo Software, and in return, receive dispatches from Yellowstone.

33. Plaintiffs may set a schedule for themselves but have no obligation to provide services at any particular time or day.

34. Plaintiffs are not obligated to provide transportation services to Yellowstone exclusively, but may contract with other dispatch companies to provide their services.

35.     Plaintiffs have never been on the payroll of Yellowstone or receive wages from Yellowstone.

36.     Plaintiffs, as independent contractors, collect the entire pre-arranged fare from the customer requesting transportation services and are incentivized to accept more dispatches from Yellowstone to increase their own revenue.

37.     Plaintiffs also do not receive fringe benefits from entering into an independent contractor relationship with Yellowstone.

38.      Plaintiffs file their own tax returns as independent contractors and deduct for expenses incurred, including maintenance, repair, and the operation of their own vehicle, in the course of their business for providing transportation services.

I hereby certify the foregoing statements made by me are true and correct to the best of my knowledge, except to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. I understand that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date: June 30, 2016

_____
Julie Wang

# EXHIBIT A

**Notice of Lawsuit and Request for Waiver of Service of Summons**

To: YELLOWSTONE TRANSPORTATION, INC. d/b/a Yes Car Services

     A lawsuit has been commenced against you (or the entity on whose behalf you are addressed). A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the _____ Eastern District of New York _____, and has been assigned docket number _____ 15-cv-7439 _____.

     This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the costs of serving you with a judicial summons and an additional copy of the complaint. The cost of service will be avoided if I receive a signed copy of the waiver within ____ 30 ____ days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope for your use. An extra copy of the waiver is also attached for your records.

     If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent (or before 90 days from that date if your address is not in any judicial district of the United States).

     If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, as authorized by those Rules, ask the court to require you to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth on the reverse side of the waiver form.

     I affirm that this request is being sent to you on behalf of the Plaintiff(s), this 21st day of January, 2016.

_John Troy_

_____

*Signature of the attorney*

*Address:* Troy Law, PLLC
           41-25 Kissena Blvd. Suite 119
           Flushing, New York, 11355
*Phone:*  (718) 762 - 1324
*Email:*   johntroy@troypllc.com

Effective as of 01/21/2016 in compliance with
Federal Rules of Civil Procedure

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| XIDONG GAO, DESHENG ZHANG, BIN LI, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   15-cv-7439(LDW)(AYS) |
| YELLOWSTONE TRANSPORTATION, INC. et al. | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To:   John Troy
_____
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____01/21/2016_____, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

YES CAR SERVICES, INC. d/b/a Yes Car Services
_____
*Printed name of party waiving service of summons*

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| XIDONG GAO, DESHENG ZHANG, BIN LI, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   15-cv-7439(LDW)(AYS) |
| YELLOWSTONE TRANSPORTATION, INC. et al. | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To:   John Troy
   *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____01/21/2016_____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

YES CAR SERVICES, INC. d/b/a Yes Car Services
*Printed name of party waiving service of summons*

_____
*Signature of the attorney or unrepresented party*

_____
*Printed name*

_____
*Address*

_____
*E-mail address*

_____
*Telephone number*

### Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| XIDONG GAO, DESHENG ZHANG, BIN LI, YANG WANG and HONGJUN HOU on behalf of themselves and others similarly situated | ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.   15-cv-7439 (LDW)(AYS) |
| YELLOWSTONE TRANSPORTATION, INC.  et al. | ) ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  See Attached Rider.


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Troy Law, PLLC
> 41-25 Kissena Blvd, Suite 119
> Flushing, NY 11355


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


DOUGLAS C. PALMER
*CLERK OF COURT*



Date:       01/15/2016

S/ Linda Anne Fagan
*Signature of Clerk or Deputy Clerk*

YELLOWSTONE TRANSPORTATION, INC.
    d/b/a Yes Car Services
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355


YES CAR SERVICES, INC.
    d/b/a Yes Car Services
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355


APRIL 2012 TRANSPORTATION, INC.
    d/b/a Yes Car Services
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355


TONY LAW
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355


JOHN 01-05 DOE'S
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355


**XIDONG GAO, DESHENG ZHANG, BIN LI, YANG WANG and HONGJUN**
**HOU on behalf of themselves and others similarly situated, against Yes Car Services**
**Summons Rider**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   15-cv-7439 (LDW)(AYS)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____                  _____
                                                        *Server's signature*

                                          _____
                                                        *Printed name and title*


                                          _____
                                                        *Server's address*

Additional information regarding attempted service, etc:




[ Print ]        [ Save As... ]                                [ Reset ]

TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:     718) 762-1324
Fax:     (718) 762-1342
*Attorney for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

XIDONG GAO,
DESHENG ZHANG,
BIN LI,
YANG WANG,
HONGJUN HOU,
*on behalf of themselves and others similarly situated*
                          Plaintiffs,

           v.

YELLOWSTONE TRANSPORTATION, INC.
    d/b/a Yes Car Services;
YES CAR SERVICES, INC.
    d/b/a Yes Car Services;
APRIL 2012 TRANSPORTATION, INC.
    d/b/a Yes Car Services;
TONY LAW, and
JOHN 01-05 DOE's.
                        Defendants.
------------------------------------------------------------x

**Case No:** 1:15-cv-7439

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**F.R.C.P. 23  CLASS ACTION**

**AMENDED COMPLAINT**

      Plaintiffs XIDONG GAO, DESHENG ZHANG, BIN LI, YANG WANG, and

HONGJUN HOU (hereafter referred to as "Plaintiff"), on behalf of themselves and other

similarly situated, by and through their attorney, Troy Law, PLLC, hereby bring this complaint

against Defendants YELLOWSTONE TRANSPORTATION, INC. d/b/a Yes Car Services; YES

CAR SERVICES, INC. d/b/a Yes Car Services; APRIL 2012 TRANSPORTATION, INC. d/b/a

Yes Car Services; TONY LAW and JOHN 01-05 DOE's.

## INTRODUCTION

1. This action is brought by Plaintiffs, on their behalves as well as other similarly situated employees against Defendants of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Defendants pay Plaintiffs on a commission basis for work they do servicing Defendants' customers. However, Defendants have unlawfully failed to pay wages free and clear and also have unlawfully reduced wages that they paid to Plaintiffs through paycheck deductions and by requiring Plaintiffs to bear Defendants' business expenses.

3. As a result of the failure to pay wages free and clear, kickbacks, and illegal deductions, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL.

4. Additionally, Yes Car Services has misclassified its employees as independent contractors. At all relevant times, Yes Car Services drivers worked exclusively and solely for Yes Car Services, was assigned regular work hours, and was assigned trips by Yes Car Services dispatchers.

5. As a precondition to employment, Yes Car Services employees are required to incorporate a New York business entity.

6. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage, (2) unpaid overtime wages, (3) unreimbursed expenses, (4) liquidated damages, (5) prejudgment and post-judgment interest; and/or (6) attorneys' fees and costs.

7. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants:  (1) unpaid minimum wage compensation, (2) unpaid overtime compensation, (3)

unreimbursed expenses, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants'

failure to provide a Time of Hire Notice detailing rates of pay and payday, (5) up to five

thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that

accurately and truthfully lists employee's hours along with the name, employer's name,

employer's address and telephone number, employee's rate or rates of pay, any deductions

made from employee's wages, any allowances claimed as part of the minimum wage, and the

employee's gross and net wages for each pay day, (6) liquidated damages equal to the sum

of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the

amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred

percent after April 9, 2011 under NY Wage Theft Prevention Act, (7) 9% simple

prejudgment interest provided by NYLL, (8) post-judgment interest, and (9) attorney's fees

and costs.

## JURISDICTION AND VENUE

8. This Court has original federal question jurisdiction over this controversy under 29 U.S.C.

   §216(b), 28 U.S.C. § 1331.

9. This Court has jurisdiction over state law claims asserted here pursuant to the Class Action

   Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York

   Labor Law claims pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and

    (c), because Defendants conduct business in this District, and the acts and omissions giving

    rise to the claims herein alleged took place in this District.

## PLAINTIFFS

11. Plaintiff XIDONG GAO ("GAO") was employed by YES CAR SERVICES, INC. d/b/a Yes

Car Services, YELLOWSTONE TRANSPORTATION INC. d/b/a Yes Car Services, and

APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services as a driver.

12. Plaintiff DESHENG ZHANG ("ZHANG") was employed by YES CAR SERVICES, INC.

d/b/a Yes Car Services, YELLOWSTONE TRANSPORTATION INC. d/b/a Yes Car

Services, and APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services as a driver.

13. Plaintiff BIN LI ("LI") was employed by YES CAR SERVICES, INC. d/b/a Yes Car

Services, YELLOWSTONE TRANSPORTATION INC. d/b/a Yes Car Services, and

APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services as a driver.

14. Plaintiff YANG WANG ("WANG") was employed by YES CAR SERVICES, INC. d/b/a

Yes Car Services, YELLOWSTONE TRANSPORTATION INC. d/b/a Yes Car Services,

and APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services as a driver.

15. Plaintiff HONGJUN HOU ("HOU") was employed by YES CAR SERVICES, INC.

Yes Car Services, YELLOWSTONE TRANSPORTATION INC. d/b/a Yes Car Services,

and APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services as a driver.

## DEFENDANTS

### Corporate Defendants

16. Defendant YES CAR SERVICES, INC d/b/a Yes Car Services is a domestic business

corporation organized under the laws of the State of New York with a principal address at

133-56 41ST AVENUE, SUITE 101, FLUSHING, NY 11355.

17. Upon information and belief, YES CAR SERVICES, INC d/b/a Yes Car Services is a

business engaged in interstate commerce that has gross sales in excess of Five Hundred

Thousand Dollars ($500,000) per year.

18. Upon information and belief YES CAR SERVICES, INC d/b/a Yes Car Services purchased

and handled goods moved in interstate commerce, having charged credit cards from out-of-state customers and dispatched rides outside of this state.

19. At all relevant times, the work performed by Plaintiff was directly essential to the businesses operated by YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services.

20. Defendant YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services is a domestic business corporation organized under the laws of the State of New York with a principal address at 133-56 41ST AVENUE, SUITE 101, FLUSHING, NY 11355.

21. Upon information and belief, YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

22. Upon information and belief YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services purchased and handled goods moved in interstate commerce, having charged credit cards from out-of-state customers and dispatched rides outside of this state.

23. At all relevant times, the work performed by Plaintiff was directly essential to the businesses operated by YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services.

24. Defendant YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services is a domestic business corporation organized under the laws of the State of New York with a principal address at 133-56 41ST AVENUE, SUITE 101, FLUSHING, NY 11355.

25. Upon information and belief, APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

26. Upon information and belief APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services purchased and handled goods moved in interstate commerce, having charged credit cards from out-of-state customers and dispatched rides outside of this state.

27. At all relevant times, the work performed by Plaintiff was directly essential to the businesses operated by APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

28. Upon information and belief, Corporate Defendants are considered the same employer under the New York Anti-Shirt Changer Law, NYLL §219.4, because "employees or the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors."

29. Specifically, upon information and belief, not only do YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services do business as Yes Car Services, but they also share the same ownership (same partners), share the same workers who worked substantially same hours and in substantially the same conditions and offer the same limousine call service to customers.

*Owner/ Operator Defendant*

30. Upon information and belief, APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services is owned by a group of partners, including Owner/ Operator Defendant TONY LAW, who is in charge of all areas of the car service, and has the power to hire and fire drivers, determining their rates of pay (amount of deduction), regular driving shift schedule (including work hours and work days), type of ride trips dispatched, designated work load and employment policy.

31. Upon information and belief, YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car

Services and YES CAR SERVICES, INC d/b/a Yes Car Services is owned by a group of partners, including Owner/ Operator Defendant TONY LAW, who is in charge of all areas of the car service, and has the power to hire and fire drivers, determining their rates of pay (amount of deduction), regular driving shift schedule (including work hours and work days), type of ride trips dispatched, designated work load and employment policy.

32. Upon information and belief, YES CAR SERVICES, INC d/b/a Yes Car Services acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Yes Car Services.

33. JOHN DOE 01-05 DOE's is an officer, director, manager and/or majority shareholder or owner of the Defendant YES CAR SERVICES, INC d/b/a Yes Car Services and, as one of the ten largest shareholders, is individually responsible for unpaid wages under the New York Business Corporation Law.

34. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or condition have been waived.

## STATEMENT OF FACTS

35. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

36. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and similarly situated employees at least the New York minimum wage for each hour worked.

37. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

38. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

39. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

40. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice in English and in Chinese (Plaintiffs' primary language) reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day as required by NYLL §195(1).

41. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

42. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

### *Plaintiff XIDONG GAO*

43. From on or about August 2013 to October 2013, Plaintiff XIDONG GAO was employed by YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

44. Plaintiff XIDONG GAO was a Driver employed by Defendants to provide car service to clients.

45. Plaintiff XIDONG GAO was scheduled to work a regular work schedule.

Case 2:15-cv-07439-LDW-AYS   Document 7   Filed 01/14/16   Page 9 of 45 PageID #: 51

46. Plaintiff XIDONG GAO's regular work schedule ran from 07:00 to 19:00 for twelve (12) hours for six (6) days, and seventy two (72) hours each workweek.

47. Plaintiff drives an average of one hundred and fifty (150) to two hundred (200) miles a day.

48. Defendants controlled Plaintiff and other Yes Car Services Drivers work by dispatching them to the clients.

49. At all relevant times, Plaintiff XIDONG GAO was required to work solely and exclusively for Yes Car Services, which is monitored through the radio dispatcher.

50. Yes Car Services employees would be disciplined and terminated if they are caught working for car services besides Yes Car Services.

51. As a precondition for employment, Plaintiff XIDONG GAO was required to incorporate a company in his name at 133-56 41ST AVENUE, SUITE 101, FLUSHING, NY 11355.

52. Plaintiff XIDONG GAO's corporation, GAOXING EXPRESS, INC., is a domestic corporation organized under the laws of the State of New York on May 28, 2013.

53. Upon information and belief, Defendant Corporations sought to evade paying its lawful share of IRS and NYS Department of Finance taxes by misclassifying Plaintiff XIDONG GAO as an independent contractor rather than as an employee and by forcing Plaintiffs to pay the higher corporate tax rather than the lower income tax with W-2.

54. Plaintiff XIDONG GAO was required to pay two hundred and seventy five dollars ($275) every half a month to YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

55. In addition to the semi-weekly radio deposit, Defendants made deduction from Plaintiff XIDONG GAO's wages, including, but not limited to, a one dollar ($1) deduction for each

ride.

56. Defendants required Yes Car Services Drivers to shoulder Defendants' business expenses, including obtaining out-of-pocket and unreimbursed car insurance, as a requirement for employment.

57. Defendants failed to obtain proper authorization for making all these deductions from the Yes Car Services drivers' wages where such authorization is required by law.

58. At all relevant times, Defendants required Plaintiff XIDONG GAO to pay for the car, the car's maintenance and operation (including gasoline fuel charges and inspection), parts and supplies that he used for his work for Defendants.

59. Defendants did not compensate for the purchase, repair, maintenance, utilization of the motor vehicle according to state and federal labor laws.

60. At all relevant times, Plaintiff XIDONG GAO was required to maintain his car in clean condition.

61. As a result, Plaintiff XIDONG GAO washed his car twice a week.

62. Plaintiff XIDONG GAO was uncompensated for his car washing activities.

63. During the first month of his employment, Plaintiff XIDONG GAO makes an average of one hundred and ninety dollars ($190) in daily revenue.

64. After deducting for ordinary out-of-pocket costs like gasoline fueling, car insurance, and maintenance costs, Plaintiff XIDONG GAO makes an average of ninety dollars ($90) in daily income.

65. During the second month of his employment, Plaintiff XIDONG GAO makes an average of one hundred and sixty dollars ($160) in revenue.

66. After deducting for ordinary out-of-pocket costs like gasoline fueling, car insurance, and

maintenance costs, Plaintiff XIDONG GAO makes an average of sixty dollars ($60) in daily income.

67. During the first month of his employment, Plaintiff XIDONG GAO makes an average of one hundred and forty dollars ($140) in revenue.

68. After deducting for ordinary out-of-pocket costs like gasoline fueling, car insurance, and maintenance costs, Plaintiff XIDONG GAO makes an average of forty dollars ($40) in daily income.

69. The deductions from wages for Defendants' business expenses caused Yes Car Service drivers' weekly pay to fall below state and/or federal minimum wage at least for part of his employment.

### Plaintiff DESHENG ZHANG

70. From on or about January 1, 2014 to the present day, Plaintiff DESHENG ZHANG was employed by YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

71. Plaintiff DESHENG ZHANG was a Driver employed by Defendants to provide car service to clients.

72. Plaintiff DESHENG ZHANG was scheduled to work a regular work schedule.

73. Plaintiff DESHENG ZHANG's regular work schedule ran from 09:00 to 17:00 and then from 19:00-24:00/25:00 (00:00 and 01:00 the next day, respectively), for thirteen and a half (13.5) hours each day, for six (6) days, and eighty one (81) hours each workweek.

74. Plaintiff DESHENG ZHANG drives an average of one hundred and fifty (150) to two hundred (200) miles a day.

75. Defendants controlled Plaintiff and other Yes Car Services Drivers work by dispatching them to the clients.

76. At all relevant times, Plaintiff DESHENG ZHANG was required to work solely and exclusively for Yes Car Services, which is monitored through the radio dispatcher.

77. Yes Car Services employees would be disciplined and terminated if they are caught working for car services besides Yes Car Services.

78. As a precondition for employment, Plaintiff DESHENG ZHANG was required to incorporate a company in his name at Yes Car Services office at 133-56 41ST AVENUE, SUITE 101, FLUSHING, NY 11355.

79. As a precondition for employment, Plaintiff DESHENG ZHANG was required to use the newly incorporated company to open a business checking account at the Chase Manhattan bank.

80. As a precondition for employment, Plaintiff DESHENG ZHANG was required pay one thousand six hundred dollars ($1600) to Defendants as the radio initiating cost.

81. Plaintiff DESHENG ZHANG's corporation, LIDE EXPRESS, INC., is a domestic corporation organized under the laws of the State of New York on December 2, 2013.

82. Upon information and belief, Defendant Corporations sought to evade paying its lawful share of IRS and NYS Department of Finance taxes by misclassifying Plaintiff DESHENG ZHANG as an independent contractor rather than as an employee and by forcing Plaintiffs to pay the higher corporate tax rather than the lower income tax with W-2.

83. DESHENG ZHANG was required to pay one hundred and fifty five dollars ($155) every week to YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012

TRANSPORTATION, INC. d/b/a Yes Car Services.

84. Plaintiff DESHENG ZHANG was required to pay thirty five dollars ($35) per month to YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services for its telephone services.

85. In addition to the semi-weekly radio deposit, Defendants made deduction from Plaintiff DESHENG ZHANG's wages, including, but not limited to, a one dollar ($1) deduction for each ride.

86. Defendants required Plaintiff DESHENG ZHANG and other Yes Car Services drivers to mark up quoted fares to customers calling from partner hotels by five to seven dollars ($5-$7). The entirety of this marked up fare goes to the Defendant corporation, and was not shared with Plaintiff and other Yes Car Services employees.

87. Defendants required Yes Car Services Drivers to shoulder Defendants' business expenses, including obtaining out-of-pocket and unreimbursed car insurance, as a requirement for employment.

88. Defendants failed to obtain proper authorization for making all these deductions from the Yes Car Services drivers' wages where such authorization is required by law.

89. At all relevant times, Defendants required Plaintiff DESHENG ZHANG to pay for the car, the car's maintenance and operation (including gasoline fuel charges and inspection), parts and supplies that he used for his work for Defendants.

90. Defendants did not compensate for the purchase, repair, maintenance, utilization of the motor vehicle according to state and federal labor laws.

91. At all relevant times, Plaintiff DESHENG ZHANG was required to maintain his car in clean

condition.

92. As a result, Plaintiff DESHENG ZHANG washed his car twice a week.

93. Plaintiff DESHENG ZHANG was uncompensated for his car washing activities, which costs fifteen to thirty dollars ($15-30) every two weeks.

94. Each day, Plaintiff DESHENG ZHANG makes an average of one hundred and fifty dollars ($150) in revenue, with a low range of one hundred and ten dollars or one hundred and twenty dollars ($110-$120) and a high range of two hundred or two hundred and ten dollars ($200-$220).

95. After deducting for ordinary out-of-pocket costs like gasoline fueling, car insurance, and maintenance costs, Plaintiff DESHENG ZHANG makes an average of fifty dollars ($50) in daily income.

96. From April 2014 to the present day, to be dispatched on longer rides, Plaintiff DESHENG ZHANG was extorted by Yes Car Services Shanghainese dispatcher Ed (Car #219) to pay bribes.

97. Yes Car Services Shanghainese dispatcher Ed (Car #219) started working on or about May 23, 2013 at Yes Car Services, working from 08:00 to 16:00, overlapping with a substantial amount of Plaintiff DESHENG ZHANG's shift.

98. Yes Car Services Shanghainese dispatcher Ed (Car #219) stopped work at Yes Car Services between October and December, 2015.

99. Yes Car Services Shanghainese dispatcher Ed (Car #219) continued to work from December 2015 to January 2016.

100. Because Plaintiff DESHENG ZHANG refused to pay bribes, he was dispatched on shorter rides with a seven dollar ($7) flat rate.

101.    Plaintiffs complained to the partners of Yes Car Services of dispatcher Ed's inappropriate extortionate behavior, but tacitly allowed such behavior to continue, refusing to discipline or terminate him.

102.    Each month, Plaintiff spends around one thousand dollars ($1000) on gasoline fueling charges and one hundred dollars ($100) on maintenance costs.

103.    The deductions from wages for Defendants' business expenses caused Yes Car Service drivers' weekly pay to fall below state and/or federal minimum wage at least for part of his employment.

### *Plaintiff BIN LI*

104.    From on or about August 1, 2014 to the present day, Plaintiff BIN LI was employed by YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

105.    Plaintiff BIN LI was a Driver employed by Defendants to provide car service to clients.

106.    Plaintiff BIN LI was scheduled to work a regular work schedule.

107.    Plaintiff BIN LI's regular work schedule ran from 05:00/06:00 to 13:00 then from 17:00 to 20:00, for ten and a half (10.5) hours each day, for six (6) days.

108.    Every two (2) weeks, Plaintiff worked seven (7) days per week.

109.    At all relevant times, Plaintiff BIN LI worked an average of sixty eight and a quarter (68.25) hours each week.

110.    Plaintiff drives an average of one hundred and fifty (150) to two hundred (200) miles a day.

111.    Defendants controlled Plaintiff and other Yes Car Services Drivers work by dispatching

them to the clients.

112.   At all relevant times, Plaintiff BIN LI was required to work solely and exclusively for
Yes Car Services, which is monitored through the radio dispatcher.

113.   Yes Car Services employees would be disciplined and terminated if they are caught
working for car services besides Yes Car Services.

114.   As a precondition for employment, Plaintiff BIN LI was required to incorporate a
company in his name at Yes Car Services office at 133-56 41ST AVENUE, SUITE 101,
FLUSHING, NY 11355.

115.   As a precondition for employment, Plaintiff BIN LI was required to use the newly
incorporated company to open a business checking account at the Chase Manhattan bank.

116.   As a precondition for employment, Plaintiff BIN LI was required pay one thousand six
hundred dollars ($1600) to Defendants as the radio initiating cost.

117.   As a precondition for employment, Plaintiff BIN LI was required pay two hundred
dollars ($200) to Defendants as the telephone initiating cost.

118.   Plaintiff BIN LI's corporation, NATION WIDE TRAVEL, INC., is a domestic
corporation organized under the laws of the State of New York on October 24, 2014.

119.   Upon information and belief, Defendant Corporations sought to evade paying its lawful
share of IRS and NYS Department of Finance taxes by misclassifying Plaintiff BIN LI as an
independent contractor rather than as an employee and by forcing Plaintiffs to pay the
higher corporate tax rather than the lower income tax with W-2.

120.   BIN LI was required to pay one hundred and fifty five dollars ($155) every week to YES
CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION
INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car

Services.

121.   Plaintiff BIN LI was required to pay thirty five dollars ($35) per month to YES CAR

SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC

d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car

Services for its telephone services.

122.   In addition to the semi-weekly radio deposit, Defendants made deduction from Plaintiff

BIN LI's wages, including, but not limited to, a one dollar ($1) deduction for each ride.

123.   Defendants required Plaintiff BIN LI and other Yes Car Services drivers to mark up

quoted fares to customers calling from partner hotels by five to seven dollars ($5-$7). The

entirety of this marked up fare goes to the Defendant corporation, and was not shared with

Plaintiff and other Yes Car Services employees.

124.   Defendants required Yes Car Services Drivers to shoulder Defendants' business

expenses, including obtaining out-of-pocket and unreimbursed car insurance, as a

requirement for employment.

125.   Defendants failed to obtain proper authorization for making all these deductions from the

Yes Car Services drivers' wages where such authorization is required by law.

126.    At all relevant times, Defendants required Plaintiff BIN LI to pay for the car, the

car's maintenance and operation (including gasoline fuel charges and inspection), parts and

supplies that he used for his work for Defendants.

127.    Defendants did not compensate for the purchase, repair, maintenance, utilization of

the motor vehicle according to state and federal labor laws.

128.    At all relevant times, Plaintiff BIN LI was required to maintain his car in clean

condition.

129.     As a result, Plaintiff BIN LI washed his car twice a week.

130.     Plaintiff BIN LI was uncompensated for his car washing activities, which costs

fifteen to thirty dollars ($15-30) every two weeks.

131.     Each day, Plaintiff BIN LI makes an average of one hundred ($100) a day in

revenue.

132.     Each month, Plaintiff BIN LI spends around one thousand two hundred dollars

($1200) on gasoline fueling charges and one thousand dollars ($100) on maintenance costs.

133.     The deductions from wages for Defendants' business expenses caused Plaintiff BIN

LI's weekly pay to fall below state and/or federal minimum wage at least for part of his

employment.

134.     After deducting for ordinary out-of-pocket costs like gasoline fueling, car

insurance, and maintenance costs, Plaintiff BIN LI makes an average of one hundred and

twenty dollars ($120) in daily income.

135.     To be dispatched on longer rides, Plaintiff BIN LI was extorted by Yes Car Services

Shanghainese dispatcher Ed (Car #219) to pay bribes.

136.     Yes Car Services Shanghainese dispatcher Ed (Car #219) started working on or

about May 23, 2013 at Yes Car Services, working from 08:00 to 16:00, overlapping with a

substantial amount of Plaintiff DESHENG ZHANG's shift.

137.     Yes Car Services Shanghainese dispatcher Ed (Car #219) stopped work at Yes Car

Services between October and December, 2015.

138.     Yes Car Services Shanghainese dispatcher Ed (Car #219) continued to work from

December 2015 to January 2016.

139.     Because Plaintiff BIN LI refused to pay bribes, he was dispatched on shorter rides

with a seven dollar ($7) flat rate.

140.     Plaintiffs complained to the partners of Yes Car Services of dispatcher Ed's inappropriate extortionate behavior, but tacitly allowed such behavior to continue, refusing to discipline or terminate him.

### Plaintiff YANG WANG

141.   From on or about December 11, 2012 to the present day, Plaintiff YANG WANG was employed by YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

142.   Plaintiff YANG WANG was a Driver employed by Defendants to provide car service to clients.

143.   Plaintiff YANG WANG was scheduled to work a regular work schedule.

144.   Plaintiff YANG WANG's regular work schedule ran from 05:00 to 17:00/18:00, for twelve and a half (12.5) hours each day, for six (6) days.

145.   Every three (3) weeks, Plaintiff YANG WANG worked seven (7) days per week.

146.   At all relevant times, Plaintiff YANG WANG worked an average of seventy nine (79) hours each week.

147.     Plaintiff drives an average of one hundred and fifty (150) to two hundred (200) miles a day.

148.   Defendants controlled Plaintiff and other Yes Car Services Drivers work by dispatching them to the clients.

149.   At all relevant times, Plaintiff YANG WANG was required to work solely and exclusively for Yes Car Services, which is monitored through the radio dispatcher.

150. Yes Car Services employees would be disciplined and terminated if they are caught working for car services besides Yes Car Services.

151. As a precondition for employment, Plaintiff YANG WANG was required to incorporate a company in his name at Yes Car Services office at 133-56 41ST AVENUE, SUITE 101, FLUSHING, NY 11355.

152. As a precondition for employment, Plaintiff YANG WANG was required to use the newly incorporated company to open a business checking account at the Chase Manhattan bank.

153. As a precondition for employment, Plaintiff YANG WANG was required pay two thousand ($2000) to Defendants as the radio initiating cost.

154. Plaintiff YANG WANG's corporation, 229YANG EXPRESS, INC. is a domestic corporation organized under the laws of the State of New York on December 11, 2012.

155. Upon information and belief, Defendant Corporations sought to evade paying its lawful share of IRS and NYS Department of Finance taxes by misclassifying Plaintiff YANG WANG as an independent contractor rather than as an employee and by forcing Plaintiffs to pay the higher corporate tax rather than the lower income tax with W-2.

156. Plaintiff YANG WANG was required to pay one hundred and eighty dollars ($180) every week to YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

157. YANG WANG was required to pay thirty five dollars ($35) per month to YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car

Services for its telephone services.

158.   In addition to the semi-weekly radio deposit, Defendants made deduction from Plaintiff YANG WANG's wages, including, but not limited to, a one dollar ($1) deduction for each ride.

159.   Defendants required Plaintiff YANG WANG and other Yes Car Services drivers to mark up quoted fares to customers calling from partner hotels by five to seven dollars ($5-$7). The entirety of this marked up fare goes to the Defendant corporation, and was not shared with Plaintiff and other Yes Car Services employees.

160.   Defendants required Yes Car Services Drivers to shoulder Defendants' business expenses, including obtaining out-of-pocket and unreimbursed car insurance, as a requirement for employment.

161.   Defendants failed to obtain proper authorization for making all these deductions from the Yes Car Services drivers' wages where such authorization is required by law.

162.   At all relevant times, Defendants required Plaintiff YANG WANG to pay for the car, the car's maintenance and operation (including gasoline fuel charges and inspection), parts and supplies that he used for his work for Defendants.

163.   Defendants did not compensate for the purchase, repair, maintenance, utilization of the motor vehicle according to state and federal labor laws.

164.   At all relevant times, Plaintiff YANG WANG was required to maintain his car in clean condition.

165.   As a result, Plaintiff YANG WANG washed his car twice a week.

166.   Plaintiff YANG WANG was uncompensated for his car washing activities, which costs fifteen to thirty dollars ($15-30) every two weeks.

167.     Each day, Plaintiff YANG WANG makes an average of two hundred dollars a day ($200) in revenue, with a low range of one hundred and eighty and two hundred dollars ($180-$200) and a high range of two hundred thirty and two hundred and fifty dollars ($230-$250).

168.     Each month, Plaintiff YANG WANG spends around one thousand two hundred dollars ($1200) on gasoline fueling charges and one thousand dollars ($100) on maintenance costs.

169.     To be dispatched on longer rides, Plaintiff YANG WANG was extorted by Yes Car Services Shanghainese dispatcher Ed (Car #219) to pay bribes.

170.     From April 2014 to October 2014, Plaintiff YANG WANG paid two hundred dollars ($200) each month to Shanghainese dispatcher Ed.

171.     Yes Car Services Shanghainese dispatcher Ed (Car #219) started working on or about May 23, 2013 at Yes Car Services, working from 08:00 to 16:00, overlapping with a substantial amount of Plaintiff DESHENG ZHANG's shift.

172.     Yes Car Services Shanghainese dispatcher Ed (Car #219) stopped work at Yes Car Services between October and December, 2015.

173.     Yes Car Services Shanghainese dispatcher Ed (Car #219) continued to work from December 2015 to January 2016.

174.     Between October 2014 and the present day, Plaintiff YANG WANG paid three hundred dollars ($300) each month to Shanghainese dispatcher Ed.

175.     Plaintiff YANG WANG was extorted by Yes Car Services Shanghainese dispatcher Ed (Car #219) to treat the dispatcher to dinner. Every month, Plaintiff has to spend three hundred to four hundred dollars ($400) for dinner.

176.       When Plaintiff YANG WANG refused to pay the bribe to Yes Car Services
Shanghainese dispatcher Ed (Car #219), he makes one hundred twenty dollars ($120)

177.       Plaintiffs complained to the partners of Yes Car Services of dispatcher Ed's
inappropriate extortionate behavior, but tacitly allowed such behavior to continue, refusing
to discipline or terminate him.

178.       The deductions from wages for Defendants' business expenses caused Plaintiff
YANG WANG's weekly pay to fall below state and/or federal minimum wage at least for
part of his employment.

*Plaintiff HONG JUN HOU*

179.   From on or about May 23, 2013 to the present day, Plaintiff HONG JUN HOU was
employed by YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE
TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012
TRANSPORTATION, INC. d/b/a Yes Car Services.

180.   Plaintiff HONG JUN HOU was a Driver employed by Defendants to provide car service
to clients.

181.   Plaintiff HONG JUN HOU was scheduled to work a regular work schedule.

182.   Plaintiff HONG JUN HOU's regular work schedule ran from 05:00/06:00 to 17:00/18:00,
for twelve (12) hours each day, for seven (7) days.

183.   At all relevant times, Plaintiff HONG JUN HOU worked an average of eighty four (84)
hours each week.

184.       Plaintiff drives an average of one hundred and fifty (150) to two hundred (200)
miles a day.

185.   Defendants controlled Plaintiff and other Yes Car Services Drivers work by dispatching

them to the clients.

186.  At all relevant times, Plaintiff HONG JUN HOU was required to work solely and exclusively for Yes Car Services, which is monitored through the radio dispatcher.

187.  Yes Car Services employees would be disciplined and terminated if they are caught working for car services besides Yes Car Services.

188.  As a precondition for employment, Plaintiff HONG JUN HOU was required to incorporate a company in his name at Yes Car Services office at 133-56 41ST AVENUE, SUITE 101, FLUSHING, NY 11355.

189.  As a precondition for employment, Plaintiff HONG JUN HOU was required to use the newly incorporated company to open a business checking account at the Chase Manhattan bank.

190.  As a precondition for employment, Plaintiff YANG WANG was required pay two thousand ($2000) to Defendants as the radio initiating cost.

191.  Plaintiff HONG JUN HOU's corporation, PINGAN395 EXPRESS, INC. is a domestic corporation organized under the laws of the State of New York on May 23, 2013.

192.  Upon information and belief, Defendant Corporations sought to evade paying its lawful share of IRS and NYS Department of Finance taxes by misclassifying Plaintiff HONG JUN HOU as an independent contractor rather than as an employee and by forcing Plaintiffs to pay the higher corporate tax rather than the lower income tax with W-2.

193.  Plaintiff HONG JUN HOU was required to pay one hundred and eighty dollars ($180) every week to YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services.

194.   Plaintiff HONG JUN HOU was required to pay thirty five dollars ($35) per month to YES CAR SERVICES, INC d/b/a Yes Car Service; YELLOWSTONE TRANSPORTATION INC d/b/a Yes Car Services; and/or APRIL 2012 TRANSPORTATION, INC. d/b/a Yes Car Services for its telephone services.

195.   In addition to the semi-weekly radio deposit, Defendants made deduction from Plaintiff HONG JUN HOU's wages, including, but not limited to, a one dollar ($1) deduction for each ride.

196.   Defendants required Plaintiff HONG JUN HOU and other Yes Car Services drivers to mark up quoted fares to customers calling from partner hotels by five to seven dollars ($5-$7). The entirety of this marked up fare goes to the Defendant corporation, and was not shared with Plaintiff and other Yes Car Services employees.

197.   Defendants required Yes Car Services Drivers to shoulder Defendants' business expenses, including obtaining out-of-pocket and unreimbursed car insurance, as a requirement for employment.

198.   Defendants failed to obtain proper authorization for making all these deductions from the Yes Car Services drivers' wages where such authorization is required by law.

199.   At all relevant times, Defendants required Plaintiff HONG JUN HOU to pay for the car, the car's maintenance and operation (including gasoline fuel charges and inspection), parts and supplies that he used for his work for Defendants.

200.   Defendants did not compensate for the purchase, repair, maintenance, utilization of the motor vehicle according to state and federal labor laws.

201.   At all relevant times, Plaintiff HONG JUN HOU was required to maintain his car in clean condition.

202.    As a result, Plaintiff HONG JUN HOU washed his car twice a week.

203.    Plaintiff HONG JUN HOU was uncompensated for his car washing activities, which costs fifteen to thirty dollars ($15-30) every two weeks.

204.    Each day, Plaintiff HONG JUN HOU makes an average of two hundred dollars a day ($200) in revenue, with a low range of one hundred and eighty and two hundred dollars ($180-$200) and a high range of two hundred thirty and two hundred and fifty dollars ($230-$250).

205.    To be dispatched on longer rides, Plaintiff HONG JUN HOU was extorted by Yes Car Services Shanghainese dispatcher Ed (Car #219) to pay bribes.

206.    From April 2014 to October 2014, Plaintiff HONG JUN HOU paid two hundred dollars ($200) each month to Shanghainese dispatcher Ed.

207.    From 2015, Plaintiff HONG JUN HOU paid three hundred dollars ($200) each month to Shanghainese dispatcher Ed.

208.    Plaintiff HONG JUN HOU was extorted by Yes Car Services Shanghainese dispatcher Ed (Car #219) to treat the dispatcher to dinner. Every month, Plaintiff has to spend four hundred dollars ($400) to five hundred dollars ($500) for dinner.

209.    Yes Car Services Shanghainese dispatcher Ed (Car #219) started working on or about May 23, 2013 at Yes Car Services, working from 08:00 to 16:00, overlapping with a substantial amount of Plaintiff HONG JUN HOU's shift.

210.    Yes Car Services Shanghainese dispatcher Ed (Car #219) stopped work at Yes Car Services between October and December, 2015.

211.    Yes Car Services Shanghainese dispatcher Ed (Car #219) continued to work from December 2015 to January 2016.

212.     Plaintiffs complained to the partners of Yes Car Services of dispatcher Ed's inappropriate extortionate behavior, but tacitly allowed such behavior to continue, refusing to discipline or terminate him.

213.     Each month, Plaintiff HONG JUN HOU spends around one thousand two hundred dollars ($1200) on gasoline fueling charges and one thousand dollars ($100) on maintenance costs.

214.     The deductions from wages for Defendants' business expenses caused Plaintiff HONG JUN HOU's weekly pay to fall below state and/or federal minimum wage at least for part of his employment.

## COLLECTIVE ACTION ALLEGATIONS

215.   Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt drivers who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

216.   Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

217.   All said persons, including Plaintiffs, are referred to herein as the "Class."

218.    The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked,

the positions held, and the rate of pay for each Class Member is also determinable from

Defendants' records. For purpose of notice and other purposes related to this action, their

names and addresses are readily available from Defendants. Notice can be provided by

means permissible under said F.R.C.P 23.

### *Numerosity*

219.    The proposed Class is so numerous that joinder of all members is impracticable, and the

disposition of their claims as a class will benefit the parities and the Court. Although the

precise number of such persons is unknown, and the facts on which the calculation of the

number is presently within the sole control of the Defendants, upon information and belief,

there are more than six hundred (600) members of the class.

220.    Currently, Yes Car Services has 159 New York City Taxi & Limousine Commission

licensee affiliates.

### *Commonality*

221.    There are questions of law and fact common to the Class which predominate over any

questions affecting only individual class members, including:

> a.    Whether Defendants employed Plaintiffs and the Class within the meaning of
>
>        the New York law;
>
> b.    Whether Defendants paid Plaintiffs and the Class their wages free and clear;
>
> c.    Whether Defendants has improperly deducted a portion of tips included in the
>
>        quoted fare to customers that belong in its entirety to Plaintiffs and the Class;

d.  Whether Defendants wrongfully shifted its business expenses to Plaintiffs and New York class members by demanding that they bear business expenses of the employer;

e.  Whether Defendants required kickbacks from Plaintiffs and New York Class Members as a requirement for employment;

f.  Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

g.  Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

h.  Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

i.  Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

j.  Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

k.  Whether Defendants provided paystubs detailing full and accurate rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday;

l.  At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work;

*Typicality*

222.    Plaintiffs' claims are typical of those claims which could be alleged by any member of

the Class, and the relief sought is typical of the relief that would be sought by each member

of the Class in separate actions. All the Class members were subject to the same corporate

practices of Defendants, as alleged herein, of failing to pay overtime compensation.

Defendants' corporate wide policies and practices affected all Class members similarly, and

Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class

member. Plaintiffs and other Class members sustained similar losses, injuries and damages

arising from the same unlawful policies, practices and procedures.

*Adequacy*

223.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no

interests antagonistic to the Class. Plaintiffs are represented by attorneys who are

experienced and competent representing Plaintiffs in both class action and wage and hour

employment and illegal kickback employment litigation cases.

*Superiority*

224.    A class action is superior to other available methods for the fair and efficient adjudication

of the controversy, particularly in the context of wage and hour litigation where individual

Class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expenses that numerous individual

actions engender.  Because the losses, injuries, and damages suffered by each of the

individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

225.   Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

## COUNT I.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Motor Vehicle, including Depreciation, Insurance, Maintenance and Repairs]

226.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

227.   Throughout the relevant period, Defendants required their car drivers to bear all of the "out-of-pocket" costs associated with their motor vehicle, including the purchase, maintenance, repair, maintenance of a motor vehicle.

228.   Based on their personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of their motor vehicle.

229.   The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the motor vehicle in working condition.

230.   Plaintiffs purchased, maintained and repaired the motor vehicle at their own expense.

231.   Plaintiffs performed car services for the sole benefit of the Defendants.

232.   Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

233.   The IRS has published a standard mileage rate used to calculate the costs of operating an automobile for business purposes.

234.   In 2013, the IRS standard mileage rate for the use of a car is 56.5 cents per mile for business miles driven.

235.   In 2014, the IRS standard mileage rate for the use of a car is 56 cents per mile for business miles driven.

236.   In 2015, the IRS standard mileage rate for the use of a car is 57.5 cents per mile for business miles driven.

237.   In 2016, the IRS standard mileage rate for the use of a car is 54 cents per mile for business miles driven.

238.   As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for motor vehicle purchase and maintenance in exchange for compensation from Defendants for such expenses.

239.   Defendants owe Plaintiffs their overdue costs of maintaining motor vehicle for Defendants' benefit.

## COUNT II.
### [FLSA Unlawful Deductions and Kickbacks
### 29 U.S.C. 201 et seq.; 29 CFR 531.35]

240.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

241.   Throughout the period covered by the applicable statute of limitations, defendants have knowingly taken unlawful deductions and kickbacks in violation of FLSA and the supporting regulations of the U.S. Department of Labor.

242.   These kickbacks and deductions include the requisite station charge, telephone monthly charge, bribe to Shanghainese operator Ed, and the one dollar per ride ($1) charge.

243.   These kickbacks and deductions bring Plaintiffs' hourly-equivalent wage below the hourly federal minimum wage.

244.   Plaintiffs seek and are entitled to recover damages for their unpaid compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, together with such other relief as this Court deems just and proper.

## COUNT III.
### [NYLL Unlawful Deductions,
### NYLL 193 & 196(d)]

245.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

246.   Throughout the period covered by the applicable statute of limitations, Defendants knowingly retained portions of gratuities received by Plaintiffs in violation of the NYLL and the supporting regulations of the New York State Department of Labor.

247.   In addition, throughout the period covered by the applicable statute of limitations, defendants have knowingly taken unlawful kickbacks in violation of FLSA and the supporting regulations of the U.S. Department of Labor.

248.   These kickbacks and deductions include the requisite station charge, telephone monthly charge, bribe to Shanghainese operator Ed, and the one dollar per ride ($1) charge.

249.   These kickbacks and deductions bring Plaintiffs' hourly-equivalent wage below the hourly state minimum wage.

250.   Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Class are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT IV.
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

251.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

252.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory

minimum wage to Plaintiffs, and the similarly situated collective action members, for some

or all of the hours they worked.

253.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall

be liable to the employees affected in the amount of their unpaid minimum compensation, and

in an additional equal amount as liquidated damages.

254.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum

wage when they knew or should have known such was due and that failing to do so would

financially injure Plaintiff and Collective Action members.

## COUNT V.
### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of Plaintiff and Rule 23 Class]

255.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if

fully herein.

256.   At all relevant times, Plaintiffs were employed by Defendants within the meaning of New

York Labor Law §§2 and 651.

257.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory

minimum wage to Plaintiffs, and the collective action members, for some or all of the hours

they worked.

258.   Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class

Members' rights by failing to pay him minimum wages in the lawful amount for hours

worked.

259.   An employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of

the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT VI.
### [Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiff and the FLSA Collective]

260.  Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

261.  The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

262.  The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

263.  Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

264.  At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

265.  The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R.

§516.4.

266.   Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements

of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA

Collectives' labor.

267.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced

by their failure to compensate Plaintiff and Collective Class Members the statutory overtime

rate of time and one half for all hours worked in excess of forty (40) per week when they

knew or should have known such was due and that failing to do so would financially injure

Plaintiffs and Collective Action members.

## COUNT VII.
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiff and Rule 23 Class]

268.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if

fully herein.

269.   An employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to twenty five percent (25%)

before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention

Act, and interest.

270.   At all relevant times, Defendants had a policy and practice of refusing to pay the

overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiff

and the class are entitled to.

271.   Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

272.   Defendants' failure to pay Plaintiffs were not in good faith.

## COUNT VIII.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff and Rule 23 Class]

273.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

274.   The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

275.   Defendants' failure to pay Plaintiffs spread-of-hours pay was not in good faith.

## COUNT IX.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and Rule 23 Class]

276.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

277.   The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL§ 162.

278.   Defendants failed to provide meal periods required by NYLL §162 for every day that Plaintiffs and the Rule 23 class work or worked.

279.   Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept

TTroy                                              38                                      complaint

conspicuously posted in the main entrance of the establishment. No such permit is posted.

280.   Defendants' failure to provide the meal periods required by NYLL §162 was not in good

faith.

## COUNT X.
### [Violation of New York Labor Law—Record-Keeping Requirements
### Brought on behalf of Plaintiff and Rule 23 Class]

281.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if

fully herein.

282.   Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for

a period of not less than six years, as required by NYRR § 146-2.1.

283.   As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including

loss of earning, in an amount to be established at trial, liquidated damages, prejudgment

interest, costs and attorneys' fee, pursuant to the state law.

284.   Upon information and belief, Defendants failed to maintain adequate and accurate written

records of actual hours worked and true wages earned by Plaintiff in order to facilitate their

exploitation of Plaintiffs' labor.

285.   Defendants' failure to maintain adequate and accurate written records of actual hours

worked and true wages earned by Plaintiffs were not in good faith.

## COUNT XI.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement
### Brought on behalf of Plaintiff and Rule 23 Class]

286.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if

fully herein.

287.   The NYLL and supporting regulations require employers to provide written notice of the

rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary,

piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including

tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address

of employer's main office or principal place of business, and a mailing address if different;

the telephone number of the employer.  NYLL §195-1(a).

288.   Defendants intentionally failed to provide notice to employees in violation of New York

Labor Law § 195, which requires all employers to provide written notice in the employee's

primary language about the terms and conditions of employment related to rate of pay, regular

pay cycle and rate of overtime on their or her first day of employment.

289.   Defendants not only did not provide notice to each employee at Time of Hire, but failed to

provide notice to Plaintiffs even after the fact.

290.   Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover

from Defendants, jointly and severally, $50 for each workday that the violation occurred or

continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New

York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT XII.
### [Violation of New York Labor Law—New York Pay Stub Requirement
### Brought on behalf of Plaintiff and Rule 23 Class]

291.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if

fully herein.

292.   The NYLL and supporting regulations require employers to provide detailed paystub

information to employees every payday. NYLL §195-1(d).

293.   Defendants have failed to make a good faith effort to comply with the New York Labor

Law with respect to compensation of each Plaintiff, and did not provide the paystub on or

after each Plaintiffs' payday.

294.   Due to Defendants' violations of New York Labor Law, each Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT XIII.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiff]

295.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

296.   26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

297.   Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XIV.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349 Brought on behalf of the Plaintiff]

298.   Plaintiffs repeat, re-allege and incorporate all allegations in all preceding paragraphs as if fully herein.

299.   NY General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such

other person may bring a civil action for damages against the person so filing such a return.

300.   Due to Defendants' violations of NY GBS Law §349, Plaintiffs are entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

301.   Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalves, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were subject to unlawful deductions and kickbacks, were not reimbursed for their out-of-pocket business expenses, and/or were denied the proper minimum wage and premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting

them to assert timely FLSA claims and state claims in this action by filing individual

Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their

counsel to represent the Collective Action Members;

d)     A declaratory judgment that the practices complained of herein are unlawful under

FLSA and New York Labor Law;

e)     An injunction against Corporate Defendants, its officers, agents, successors,

employees, representatives and any and all persons acting in concert with them as

provided by law, from engaging in each of unlawful practices and policies set forth

herein;

f)     An award of unpaid minimum wage and overtime wages due under FLSA and New

York Labor Law due Plaintiff and the Collective Action members plus compensatory

and liquidated damages in the amount of twenty five percent (25%) prior to April 9,

2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention

Act;

g)     An award of liquidated and/or punitive damages as a result of Defendants' knowing

and willful failure to pay wages at least the hourly minimum wage, overtime

compensation pursuant to 29 U.S.C. §216;

h)     Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a

Time of Hire Notice detailing rates of pay and payday;

i)     Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a

paystub that lists employee's name, employer's name, employer's address and

telephone number, employee's rate or rates of pay, any deductions made from

employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)   Reimbursement of reasonable out-of-pocket costs sustained by Plaintiffs and similarly situated drivers in the purchase, maintenance and repair of their motor vehicle in direct service of Defendants;

k)   An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

l)   An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)   The cost and disbursements of this action;

n)   An award of prejudgment and post-judgment fees;

o)   Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

p)   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
January 14, 2016

TROY LAW, PLLC
*Attorney for the Plaintiffs, proposed FLSA*
*Collective and Proposed Class Plaintiffs*


  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Fax: (718) 762-1342
Email: johntroy@troypllc.com

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR SERVICES RENDERED

TO:    TONY LAW, and JOHN 01-05 DOE's

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that

**XIDONG GAO, DESHENG ZHANG, BIN LI, YANG WANG, HONGJUN HOU,** *on behalf of themselves and others similarly situated*

intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of

YELLOWSTONE TRANSPORTATION, INC.
d/b/a Yes Car Services;
YES CAR SERVICES, INC.
d/b/a Yes Car Services; and
APRIL 2012 TRANSPORTATION, INC.
d/b/a Yes Car Services

for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: January 14, 2016

TROY LAW, PLLC
*Attorneys for Plaintiffs, the proposed FLSA Collective and Potential Rule 23 Class*

  /John Troy/
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Fax: (718) 762-1342
Email: johntroy@troypllc.com

## DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW

TO:

YELLOWSTONE TRANSPORTATION, INC.
    d/b/a Yes Car Services
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355

YES CAR SERVICES, INC.
    d/b/a Yes Car Services
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355

APRIL 2012 TRANSPORTATION, INC.
    d/b/a Yes Car Services
133-56 41ST AVENUE, SUITE 101
FLUSHING, NY 11355

PLEASE TAKE NOTICE,

**XIDONG GAO, DESHENG ZHANG, BIN LI, YANG WANG, HONGJUN HOU,** *on behalf of themselves and others similarly situated*

as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: January 14, 2016

TROY LAW, PLLC
*Attorneys for Plaintiffs, the proposed FLSA*
*Collective and Potential Rule 23 Class*
  /John Troy/
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Fax: (718) 762-1342
Email: johntroy@troypllc.com

TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    718) 762-1324
Fax:    (718) 762-1342
*Attorney for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
XIDONG GAO,
DESHENG ZHANG,
BIN LI,                                                          **Case No: 1:15-cv-7439**
YANG WANG,
HONGJUN HOU,
*on behalf of themselves and others similarly situated*
                              Plaintiffs,

              v.                                          <u>**CONSENT TO JOIN FORM**</u>

YELLOWSTONE TRANSPORTATION, INC.
d/b/a Yes Car Services;
YES CAR SERVICES, INC.
d/b/a Yes Car Services;
APRIL 2012 TRANSPORTATION, INC.
d/b/a Yes Car Services;
TONY LAW, and
JOHN 01-05 DOE's.
                              Defendants.
-------------------------------------------------------------x
        By my signature below, I hereby authorize the filing and prosecution of the above-styled
Fair Labor Standards Act action under Section 216 (b) of the FLSA and agree to act as a
representative of others similarly situated and to make decisions on my behalf and on behalf of
others similarly situated concerning the litigation, the method and manner of conduction this
litigation, and all other matters pertaining to this lawsuit.


_____            _____
Print Name                                                  Sign Name


_____            _____
Address                                                       Telephone


_____            _____
Address                                                       Date

TO:

TROY LAW, PLLC
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
718) 762-1324

## DOCUMENT PRESERVATION DEMAND

Plaintiff(s) hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/ John Troy
John Troy

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 35% or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

/s/ John Troy
John Troy
TROY LAW, PLLC
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
718 762 1324
718 762 1342 (fax)

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

### YES LIMO

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

PARTY PLAINTIFF          XIDONG GAO          Signature

_____

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

### Yes Limo

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

PARTY PLAINTIFF

Zhang, DeSheng                    Signature

_____

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

Yes Limo

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

X WANG YANG

PARTY PLAINTIFF                 Wang, Yang               Signature

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

Yes Limo

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

PARTY PLAINTIFF          Li, Bin          Signature

01/12/16

Date

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of DEFENDANT(S), EMPLOYER

Yes Limo

to pay me overtime wages and/or minimum wages as required under state and/or federal law including the Fair Labor Standards Act and also authorize the filing of this consent in the action(s) challenging such conduct.

PARTY PLAINTIFF                    Hou, HongJun                    Signature

Date

# EXHIBIT B

## INDEPENDENT CONTRACTOR SERVICES AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 1[TH] day of JULY 2013 (the "Effective Date"), between GAOXING EXPRESS **INC** ("Contractor") and **YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service** ("Company/Base").

## W I T N E S S E T H:

**WHEREAS,** in accordance with TLC Rule Section 6-04(a), YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is a Base Station duly licensed by the New York City Taxi and Limousine Commission (the "TLC"), under Base #B00248.

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   has submitted to the TLC a business plan for the operation of the Base Station and such plan is in full compliance with TLC Rule Section 6-04(j);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to maintain and enforce rules governing the conduct of affiliated drivers while performing their duties as for-hire-vehicle drivers, in accordance with TLC Rule Section 6-07(c);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to handle all customer complaints involving the conduct of affiliated drivers, in accordance with TLC Rule Section 6-07(k);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to provide the customer who contacts the base for transportation services with an accurate and binding price quote, in accordance with TLC Rule Section 6-07(a);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to ensure that requests for transportation services by a customer are provided only by pre-arrangement through the Base, in accordance with TLC Rule Section 6-07(a);

**WHEREAS,** Contractor is licensed by the TLC in accordance with the TLC Rules and Regulations Section 6-15(a);

**WHEREAS,** Contractor has reviewed the Company's schedule of rates and is aware that such have been filed with the TLC in accordance with Section 6-08(c);

**WHEREAS,** Contractor has reviewed Section 6 of the TLC rules and regulations that governs For-Hire-Vehicles and acknowledges that he/she is in and will remain in compliance with the TLC rules;

**WHEREAS,** in accordance with TLC Rule Section 6-11, the owner of a For-hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base

**WHEREAS**, in accordance with TLC Rule Section 6-08(g); vehicles affiliated with the base or dispatched by the base and drivers of such vehicles are prohibited from accepting street hails.

**WHEREAS**, in accordance with TLC Rule Section 6-12, the owner of a For-Hire Vehicle must provide to the Company and the for-Hire Vehicle must contain the documentation listed in TLC Rule Section 6-12(f)

**WHEREAS**, Contractor is seeking to contract with, utilize the dispatch services of the Company and/or otherwise become affiliated with Company in connection with for-hire transportation;

**WHEREAS**, the parties wish to enter into this Agreement to reflect their mutual understandings and agreements;

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1. <u>Services.</u>   Contractor and Company shall perform the following services in accordance with the following:

A. Contractor will provide the following Services and perform the following duties:

(a)   Contractor shall have the right and/or option to notify the Company when he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers who may contact the Company to schedule pre-arranged transportation. Such notification by the Contractor shall be by means of two-way radio or other electronic device. Once Contractor exercises his/her option to notify the Company that he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers, Contractor shall have the right to accept any job/trip that is offered/provided to him/her by the Company;

(b)   If a job/trip is transmitted to the Contractor by the Company, the Contractor has the right/option to refuse to accept any job/trip;

(c)   Once the Contractor has opted to accept a job/trip, Contractor shall transport the passenger(s)/customer(s) as per the prearranged reservation provided to the Company by the passenger(s)/customer(s) and transmitted by the Company to the Contractor;

(d)   Once the Contractor provides transportation services to the passenger(s)/customer(s); as per the prearranged reservation provided to the Company, Contractor is responsible for the collection of the fee from the passenger(s)/customer(s).

B. Company will provide the following Services and perform the following duties:

(a)   Company shall serve as a base station (as defined by the Rules of the TLC) and shall seek to obtain customers who seek transportation services via pre-arrangement through the Company;

(b)   Company shall provide the option to Contractor to receive and accept requests for transportation services from customers of the Company. At the option of the Contractor, the Company shall transmit information relative to each job/trip to the Contractor as it was provided to the Company by the customer;

(c)    Company shall provide the Contractor with the option to set his/her own hours and days in which he/she seeks to receive and accept any job/trip that is offered/provided to him/her by the Company;

2. Right to Contract With Others. Contractor retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3. Right to Set Own Schedule.   Contractor has no obligation to provide his/her services to the Company on any particular hours or days or any particular number of hours or days. Contractor retains the right to take vacation and/or cease to provide transportation services at any time.

4. No Right to Control.   The Company shall have no right to control or direct the details, manner or means by which Contractor provide the Services, except as specified by the TLC rules and regulations.

5. Vehicle. Contractor must own and/or rent and/or lease a vehicle that is licensed in accordance with the laws of the State of New York and the Rules of the TLC. Company does not own and shall not provide any vehicle to the Contractor for any purposes whatsoever. Company shall not pay for or reimburse Contractor for any costs associated with the ownership, lease or rental of such vehicle.

6. Expenses. Contractor shall be responsible for his/her own expenses. Such expenses shall include, but are not limited to, the cost of licensing, insurance, maintenance, gas, upkeep. Company will not reimburse Contractor whatsoever for any such expenses associated with the operation of a For-Hire-Vehicle and/or the operation of Contractor's independent business as an affiliated For-Hire-Vehicle driver.

7. Worker's Compensation and Disability Insurance. Contractor may elect to purchase his/her own Worker's Compensation Insurance and/or Disability Insurance. Subject to the relevant provisions of the TLC Regulations, Company is not obligated to provide any Contractor with any such coverage or policy of insurance.

8. Independent Contractor - Not Employee.   Contractor agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

9. Taxes. Contractor acknowledges and agrees that the Company has no responsibility whatsoever for the payment or withholding of any taxes or other obligations that may arise from Contractor providing the transportation services contemplated herein.

10. Collection from Customer.
    a. Contractor shall collect the pre-arranged fare from Customer, plus fees for any additional customer requests, if applicable;
    b. Contractor shall be entitled to collect from the passenger for any tolls or parking fees the Contractor paid in connection with the trip provided to the customer;
    c. Contractor shall be entitled to any gratuities provided in the passenger's discretion

11. Fee Arrangement.   In consideration for the Services Company provides to Contractor, the Contractor agrees to and shall pay Company a weekly fee of $150.00 (5 passengers of sedan) or $175.00 (7 passengers of mini van).

12.  Termination of Agreement. The Parties may terminate this agreement at any time.

13. General Provisions.

(a)    This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b)    If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c)    The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor: GAOXING EXPRESS **INC**

By: ___X / Dong Gao.___
Name: GAO, XIDONG (PRESIDENT)

DATE: __7 / 1 / 2013__

YELLOWSTONE Transportation, Inc.

By: ___Julie___
Name: JULIE WANG (MANAGER)

DATE: ___7/1/2013___

4

# Acknowledgement and Receipt

**Signature on this receipt acknowledges that you have received and reviewed a copy of Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations**

I certify that I have received and reviewed Chapter 6 of the New York City Taxi And Limousine Commission Rules and Regulations and further understand that, by signing this statement, I am indicating that I have not only read Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations, but that I understand its contents and have had the opportunity to discuss any questions I may have had as of the date indicated below.


X1 _Dong Gao_
**Name (Please Print)**

X1 _Dong Gao_
**Signature**

_7 / 1 / 2013_
**Date**

5

## SPONSOR AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 1st day of July 2013 (the "Effective Date"), between GAOXING EXPRESS **INC** ("Contractor/Vehicle Owner") and **Yellowstone Transportation Inc.** ("Company/Base").

**WHEREAS,** in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-01, GAOXING EXPRESS **INC** ("Contractor/Vehicle Owner") has requested that Yellowstone Transportation Inc. ("Company/Base") act as Contractor/Vehicle Owner's Sponsor who, if licensed by the Commission, will be eligible to have such vehicle affiliated with said Base.

**WHEREAS,** in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-11, the owner of a For-Hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such vehicle owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base.

**WHEREAS,** Contractor/Vehicle Owner is seeking to contract with, utilize the dispatch services of the Company and/or otherwise have such vehicle affiliated with Company in connection with For-Hire Transportation;

**WHEREAS,** in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-12.1(f), the Vehicle Owner shall not permit his or her vehicle to transport passengers for hire other than through pre-arrangement with a base licensed by the Commission.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1. <u>Services</u>

A. <u>Non-Refundable Application/Affiliation Fees.</u> Contractor/Vehicle Owner will pay Company a non-refundable one-time fee of $2,000.00 in connection with having the vehicle identified in **Exhibit A** become affiliated with Company for purposes of Contractor/Vehicle Owner's provision of For-Hire transportation services;

B. Company will notify the New York City Taxi and Limousine Commission of Contractor/Vehicle Owners' desire to affiliate such vehicle with Company in connection with For-Hire Transportation and desire of Contractor/Vehicle Owner to have Company serve as a base station (as defined by the Rules of the TLC) for customers who seek transportation services via pre-arrangement through the Company;

2. <u>Right to Contract With Others.</u> Contractor/Vehicle Owner retains the right to contract

for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3. <u>Independent Contractor - Not Employee.</u> Contractor/Vehicle Owner agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

4. <u>Fee Arrangement.</u> In consideration for the foregoing, Company shall not charge any other affiliation fees to Contractor/Vehicle Owner and Contractor/Vehicle Owner shall retain the right to charge any fees to the persons who operate the vehicle that shall be affiliated with Company.

5. <u>General Provisions.</u>

(a) This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b) If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c) The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.


Contractor/Vehicle Owner
GAOXING EXPRESS INC

By: _____          _____7/1/2013_____
**GAO, XIDONG (PRESIDENT)**                         Date


Company
**Yellowstone Transportation Inc**

By: _____          _____7/1/2013_____
**Julie Wang   Manager**                                    Date

2

License Plate #                    _____

VIN #:  4T1BK1EB0DU044576

TLC License #:                    _____

Car#:                    _____#568_____

## 独立承包商服务协议

本协议（"协议"）于2013年7月1日起生效（"生效日期"），缔约方为：GAOXING EXPRESS INC（"承包商"）和YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service（"公司／基站"）。

## 兹见证：

鉴于，根据纽约市出租车管理协会("TLC")规则第 6-04(a)条，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 是根据 Base #B00248 获 TLC 正式许可的基站；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 已向 TLC 提交一项运营基站的业务计划，且该计划完全符合 TLC 规则第 6-04(j)条；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 根据 TLC 规则第 6-07(c)条，按照 TLC 的要求维护并强制执行相关规则，该等规则用以监管关联驾驶员在执行约租车驾驶员义务时的行为；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(k)条，按照TLC的要求处理所有涉及关联驾驶员行为的客户投诉；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求向与基站联系以寻求交通运输服务的客户提供准确和具有约束力的报价；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求，保证仅按照基站的预先安排向客户提供其寻求的运输服务；

鉴于，承包商根据 TLC 的规则及规例第 6-15(a)条获得 TLC 许可；

鉴于，承包商已审核公司的价格安排，并知悉该价格安排已根据第 6-08(c)条提交予TLC；

鉴于，承包商已审核 TLC 规则及规例第 6 条有关监管约租车驾驶员的内容，并确认他／她现已并将继续遵守 TLC 的规则；

鉴于，根据 TLC 规则第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联；

鉴于，根据 TLC 规则第 6-08(g)条，与基站相关联的车辆或基站派遣的车辆及有关车辆的驾驶员禁止接受街头拦车要求；

鉴于，根据 TLC 规则第 6-12 条，约租车拥有人必须向公司提供 TLC 规则第 6-12(f)条所列的文件，且约租车必须拥有该等文件；

鉴于，承包商寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式与公司发生关联；

鉴于，双方有意订立本协议以反映其互相谅解及协定；

因此，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1.    服务.  承包商和公司将按照以下条文执行下列服务：

A. 承包商将提供下列服务并执行以下义务：

(a)    承包商有权及／或选择权在其准备好、愿意、能够及／或希望接受由与公司联系以预先安排运输服务的客户提供的工作／行程后，向公司发出通知。承包商须使用对讲机或其他电子设备发出有关通知。一旦承包商行使他／她的选择权，通知公司他／她已准备好、愿意、能够及／或希望接受客户提供的工作／行程，承包商有权接受公司向他／她提供／提出的任何工作／行程；

(b)    如果公司向承包商传达工作／行程，承包商有权利／选择权拒绝接受任何工作／行程；

(c)    一旦承包商选择接受工作／行程，承包商须按照乘客／客户向公司提供的且由公司向承包商传达的预约安排，将该乘客／客户送至预约地点；

(d)    一旦承包商按照向公司提供的预约安排向乘客／客户提供运输服务，承包商应负责从乘客／客户处收取相关费用。

B. 公司将提供下列服务并执行以下义务：

(a)    公司须充当基站（定义见 TLC 规则），并尽力争取通过预先安排向公司寻求运输服务的客户；

(b)    公司须向承包商提供接收和接受公司客户的运输服务请求的选择权。按照承包商的选择，公司应向承包商传达客户向其提供的与各项工作／行程有关的信息；

(c)    公司须在承包商有意接收和接受由公司向其提议／提供的任何工作／行程时，向他／她提供设置适合他／她特有时间和日期的选择权；

2. 与他人签订合约的权利. 承包商受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3. 设置特有时间安排的权利. 承包商概无任何义务在任何具体时间或日期向公司提供服务，且没有任何具体的服务小时数或天数。承包商保留于任何时间休假及／或终止提供运输服务的权利。

4. 无控制权.  公司无权控制或指导承包商提供服务的详细情况、方式或方法，惟 TLC 规则及规例指明者除外。

5. 车辆. 承包商必须拥有及／或租用及／或租赁一辆根据纽约州法律和 TLC 规则获发许可证的车辆。公司不拥有且无论如何不会以任何目的向承包商提供任何车辆。公司将不会向承包商支付或赔偿与此车辆的所有权、租赁或租用有关的任何费用。

6. 费用. 承包商须负责他／她自己产生的费用。此等费用包括但不限于：许可证、保险、保养、汽油和维修费等费用。无论如何，公司将不会向承包商偿付与约租车经营及／或承包商作为关联租用车辆驾驶员的独立业务经营有关的任何费用。

7. 工人赔偿及伤残保险. 承包商可选择为他／她自己的工人购买赔偿保险及／或伤残保险。在 TLC 规例相关条文的规限下，公司概无向任何承包商提供任何此等保额或保单的义务。

8. 独立承包商——非雇员. 承包商同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

9. 税务. 承包商确认及同意，公司概无任何责任支付或扣缴任何税款，亦不承担承包商为提供本协议项下预期的运输服务而可能产生的任何其他义务。

10. 从客户处收取费用.
   a. 承包商须从客户处收取事先安排的车费及与任何其他客户要求有关的费用（如适用）；
   b. 承包商有权从乘客处收取承包商支付的任何通行费或停车费（与向客户提供的行程有关）；
   c. 承包商有权收取乘客酌情提供的任何小费。

11. 收费安排. 鉴于公司向承包商提供服务，承包商同意并应当向公司按周支付 175.00 美元(七座位车) 或 150.00 美元（五座位车）。

12. 协议终止. 双方可于任何时间终止本协议。

13. 一般条文.

   (a) 本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

   (b) 如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用

(c)     本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证，**双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。

承包商: GAOXING EXPRESS **INC**                YELLOWSTONE transportation, Inc.


签署人: _Xi Dong Gao_                        签署人: _____
姓名: GAO, XIDONG (总裁)                      姓名: JULIE WANG（经理）

# 确认及接受

**签署本接受确认书，即表示您已接受及审核纽约市出租管理协会规则及规例第6章副本**

本人证明，本人已接受及审核纽约市出租管理协会规则及规例第6章；并进一步了解，通过签署本声明，本人表明本人不仅已阅读纽约市出租管理协会规则及规例第6章的内容，而且在截至下文指定日期前，本人理解其内容并已有机会就本人可能产生的任何问题进行讨论。


_Xi Dong Gao._
正楷签字

_Xi Dong Gao_
签名

_7 / 1 / 2013_
日期

保证人协议

**本协议**（"协议"）于 2013 年 7 月 1 日起生效（"生效日期"），缔约方为：GAOXING EXPRESS INC（"承包商／车辆拥有方"）和 YELLOWSTONE TRANSPORTATION INC.（"公司／基站"）。

鉴于，根据纽约市出租车管理协会规则及规例第 6-01 条，GAOXING EXPRESS **INC**（"承包商／车辆拥有方"）要求 YELLOWSTONE TRANSPORTATION INC.（"公司／基站"）担任承包商／车辆拥有方的保证人，在获管理协会许可的情况下，将有资格拥有与上述基站相关联的有关车辆。

鉴于，根据纽约市出租车管理协会规则及规例第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等车辆拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联。

鉴于，承包商／车辆拥有方寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式拥有与公司相关联的有关车辆；

鉴于，根据纽约市出租车管理协会规则及规例第 6-12.1(f)条，车辆拥有人除非获得管理协会许可的基站订立的预先安排，否则不得允许其车辆载客出租。

**因此**，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1.服务
　　不可退还的应用／关联费用(Application/Affiliation Fees) 承包商／车辆拥有方将为提供约租运输服务之目的，就拥有**附录 A**中指明的与公司相关联的车辆向公司一次性支付不可退还的 2,000.00 美元费用；

公司将通知纽约市出租车管理协会，承包商／车辆拥有人欲就约租运输将有关车辆与公司相关联，且承包商／车辆拥有人希望公司通过预先安排，为向公司寻求运输服务的客户充当基站（定义见 **TLC** 规则）。

2.与他人签订合约的权利. 承包商／车辆拥有方受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3.<u>独立承包商——非雇员</u>. 承包商／车辆拥有方同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

4. <u>收费安排</u>. 鉴于前述事项，公司不得向承包商／车辆拥有人收取任何其他关联费用，且承包商／车辆拥有人保留向运营与公司相关联车辆的人士收取任何费用的权利。

5. 一般条文.

   (a) 本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

   (b) 如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用。

   (c) 本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。


承包商／车辆拥有方
GAOXING EXPRESS INC

签署人：_Xi' Dong Gao._          _7/1/2013_
GAO, XIDONG                              日期


公司
YELLOWSTONE TRANSPORATION INC.
签署人：_____          _7/1/2013_
JULIE WANG                                日期


牌照#          _____

车辆识别号码#   4T1BK1EB0DU044576

TLC 许可证#: _____

车辆 : #568

# EXHIBIT C

保证人协议

**本协议**（"协议"）于 2014 年 5 月 8 日起生效（"生效日期"），缔约方为：NATION WIDE TRAVEL LLC（"承包商／车辆拥有方"）和 YELLOWSTONE TRANSPORTATION INC.（"公司／基站"）。

**鉴于**，根据纽约市出租车管理协会规则及规例第 6-01 条，NATION WIDE TRAVEL LLC（"承包商／车辆拥有方"）要求 YELLOWSTONE TRANSPORTATION INC.（"公司／基站"）担任承包商／车辆拥有方的保证人，在获管理协会许可的情况下，将有资格拥有与上述基站相关联的有关车辆。

**鉴于**，根据纽约市出租车管理协会规则及规例第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等车辆拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联。

**鉴于**，承包商／车辆拥有方寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式拥有与公司相关联的有关车辆；

**鉴于**，根据纽约市出租车管理协会规则及规例第 6-12.1(f)条，车辆拥有人除非获得管理协会许可的基站订立的预先安排，否则不得允许其车辆载客出租。

**因此**，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1.服务

公司将通知纽约市出租车管理协会，承包商／车辆拥有人欲就约租运输将有关车辆与公司相关联，且承包商／车辆拥有人希望公司通过预先安排，为向公司寻求运输服务的客户充当基站（定义见 TLC 规则）。

2.与他人签订合约的权利. 承包商／车辆拥有方受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3.独立承包商——非雇员. 承包商／车辆拥有方同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

4. <u>收费安排.</u> 鉴于前述事项，公司不得向承包商／车辆拥有人收取任何其他关联费用，且承包商／车辆拥有人保留向运营与公司相关联车辆的人士收取任何费用的权利。

5. 一般条文.

(a) 本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

(b) 如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用。

(c) 本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。

承包商／车辆拥有方
NATION WIDE TRAVEL LLC
签署人：____Li Bin____          05/08/14
LI, BIN                              日期

公司
YELLOWSTONE TRANSPORATION INC.
签署人：_____          5/8/14
WALLACE XU                        日期

牌照#    ____423 774 465____

车辆识别号码#   5FNYF3H51DB028433

TLC 许可证#：5484269

车辆：#585

2

## SPONSOR AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 8th day of May 2014 (the "Effective Date"), between NATION WIDE TRAVEL LLC ("Contractor/Vehicle Owner") and **Yellowstone Transportation Inc.** ("Company/Base").

**WHEREAS,** in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-01, FEIYANG EXPRESS INC ("Contractor/Vehicle Owner") has requested that Yellowstone Transportation Inc. ("Company/Base") act as Contractor/Vehicle Owner's Sponsor who, if licensed by the Commission, will be eligible to have such vehicle affiliated with said Base.

**WHEREAS,** in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-11, the owner of a For-Hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such vehicle owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base.

**WHEREAS,** Contractor/Vehicle Owner is seeking to contract with, utilize the dispatch services of the Company and/or otherwise have such vehicle affiliated with Company in connection with For-Hire Transportation;

**WHEREAS,** in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-12.1(f), the Vehicle Owner shall not permit his or her vehicle to transport passengers for hire other than through pre-arrangement with a base licensed by the Commission.

**NOW, THEREFORE,** in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1. Services

   Company will notify the New York City Taxi and Limousine Commission of Contractor/Vehicle Owners' desire to affiliate such vehicle with Company in connection with For-Hire Transportation and desire of Contractor/Vehicle Owner to have Company serve as a base station (as defined by the Rules of the TLC) for customers who seek transportation services via pre-arrangement through the Company;

   2.Right to Contract With Others. Contractor/Vehicle Owner retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

   3.Independent Contractor - Not Employee.   Contractor/Vehicle Owner agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

4. <u>Fee Arrangement.</u>  In consideration for the foregoing, Company shall not charge any other affiliation fees to Contractor/Vehicle Owner and Contractor/Vehicle Owner shall retain the right to charge any fees to the persons who operate the vehicle that shall be affiliated with Company.

5. <u>General Provisions.</u>

(a) This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b) If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c) The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor/Vehicle Owner
   **NATION WIDE TRAVEL LLC**

By: _Li Bin_                 08/08/14
   **LI, BIN (PRESIDENT)**                       Date

Company
   **Yellowstone Transportation Inc**

By: _[signature]_              5/8/14
   **WALLACE XU Manager**                   Date

License Plate #     423 774 465

VIN #:   5FNYF3H51DB028433

TLC License #:   5484269

Car#:    585

# 独立承包商服务协议

本协议（"协议"）于 2014 年 5 月 8 日起生效（"生效日期"），缔约方为 NATION WIDE TRAVEL LLC（"承包商"）和 YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service（"公司／基站"）。

## 兹见证：

鉴于，根据纽约市出租车管理协会("TLC")规则第 6-04(a)条，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 是根据 Base #B00248 获 TLC 正式许可的基站；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 已向 TLC 提交一项运营基站的业务计划，且该计划完全符合 TLC 规则第 6-04(j)条；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 根据 TLC 规则第 6-07(c)条，按照 TLC 的要求维护并强制执行相关规则，该等规则用以监管关联驾驶员在执行约租车驾驶员义务时的行为；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(k)条，按照TLC的要求处理所有涉及关联驾驶员行为的客户投诉；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求向与基站联系以寻求交通运输服务的客户提供准确和具有约束力的报价；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求，保证仅按照基站的预先安排向客户提供其寻求的运输服务；

鉴于，承包商根据 TLC 的规则及规例第 6-15(a)条获得 TLC 许可；

鉴于，承包商已审核公司的价格安排，并知悉该价格安排已根据第 6-08(c)条提交予 TLC；

鉴于，承包商已审核 TLC 规则及规例第 6 条有关监管约租车驾驶员的内容，并确认他／她现已并将继续遵守 TLC 的规则；

鉴于，根据 TLC 规则第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联；

鉴于，根据 TLC 规则第 6-08(g)条，与基站相关联的车辆或基站派遣的车辆及有关车辆的驾驶员禁止接受街头拦车要求；

鉴于，根据 TLC 规则第 6-12 条，约租车拥有人必须向公司提供 TLC 规则第 6-12(f)条所列的文件，且约租车必须拥有该等文件；

鉴于，承包商寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式与公司发生关联；

鉴于，双方有意订立本协议以反映其互相谅解及协定；

因此，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1. 　服务.　承包商和公司将按照以下条文执行下列服务：

A. 承包商将提供下列服务并执行以下义务：

(a) 承包商有权及／或选择权在其准备好、愿意、能够及／或希望接受由与公司联系以预先安排运输服务的客户提供的工作／行程后，向公司发出通知。承包商须使用对讲机或其他电子设备发出有关通知。一旦承包商行使他／她的选择权，通知公司他／她已准备好、愿意、能够及／或希望接受客户提供的工作／行程，承包商有权接受公司向他／她提供／提出的任何工作／行程；

(b) 如果公司向承包商传达工作／行程，承包商有权利／选择权拒绝接受任何工作／行程；

(c) 一旦承包商选择接受工作／行程，承包商须按照乘客／客户向公司提供的且由公司向承包商传达的预约安排，将该乘客／客户送至预约地点；

(d) 一旦承包商按照向公司提供的预约安排向乘客／客户提供运输服务，承包商应负责从乘客／客户处收取相关费用。

B. 公司将提供下列服务并执行以下义务：

(a) 公司须充当基站（定义见 TLC 规则），并尽力争取通过预先安排向公司寻求运输服务的客户；

(b) 公司须向承包商提供接收和接受公司客户的运输服务请求的选择权。按照承包商的选择，公司应向承包商传达客户向其提供的与各项工作／行程有关的信息；

(c) 公司须在承包商有意接收和接受由公司向其提议／提供的任何工作／行程时，向他／她提供设置适合他／她特有时间和日期的选择权；

2. 与他人签订合约的权利. 承包商受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3. 设置特有时间安排的权利. 承包商概无任何义务在任何具体时间或日期向公司提供服务，且没有任何具体的服务小时数或天数。承包商保留于任何时间休假及／或终止提供运输服务的权利。

4. 无控制权.　公司无权控制或指导承包商提供服务的详细情况、方式或方法，惟 TLC 规则及规例指明者除外。

5. 车辆. 承包商必须拥有及／或租用及／或租赁一辆根据纽约州法律和 TLC 规则获发许可证的车辆。公司不拥有且无论如何不会以任何目的向承包商提供任何车辆。公司将不会向承包商支付或赔偿与此车辆的所有权、租赁或租用有关的任何费用。

6. 费用. 承包商须负责他／她自己产生的费用。此等费用包括但不限于：许可证、保险、保养、汽油和维修费等费用。无论如何，公司将不会向承包商偿付与约租车经营及／或承包商作为关联租用车辆驾驶员的独立业务经营有关的任何费用。

7. 工人赔偿及伤残保险. 承包商可选择为他／她自己的工人购买赔偿保险及／或伤残保险。在 TLC 规例相关条文的规限下，公司概不向任何承包商提供任何此等保额或保单的义务。

8. 独立承包商——非雇员. 承包商同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

9. 税务. 承包商确认及同意，公司概无任何责任支付或扣缴任何税款，亦不承担承包商为提供本协议项下预期的运输服务而可能产生的任何其他义务。

10. 从客户处收取费用.
   a. 承包商须从客户处收取事先安排的车费及与任何其他客户要求有关的费用（如适用）；
   b. 承包商有权从乘客处收取承包商支付的任何通行费或停车费（与向客户提供的行程有关）；
   c. 承包商有权收取乘客酌情提供的任何小费。

11. 收费安排. 鉴于公司向承包商提供服务，承包商同意并应当向公司按周支付 180.00 美元(七座位车) 或 155.00 美元（五座位车）。

12. 协议终止. 双方可于任何时间终止本协议。

13. 一般条文.

   (a)    本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

   (b)    如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用

3

(c)　本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。

承包商：NATION WIDE TRAVEL LLC　　　　YELLOWSTONE transportation, Inc.

签署人：___*Li Bin*___　　　　　　　　　签署人：_____

姓　名：LI, BIN (总裁)　　　　　　　　　姓　名：WALLACE XU（经理）

日　期：___05/ 08 /14___　　　　　　　　日　期：___5/8/14___

4

## <u>确认及接受</u>

**签署本接受确认书，即表示您已接受及审核纽约市出租管理协会规则及规例第6章副本**

本人证明，本人已接受及审核纽约市出租管理协会规则及规例第6章；并进一步了解，通过签署本声明，本人表明本人不仅已阅读纽约市出租管理协会规则及规例第6章的内容，而且在截至下文指定日期前，本人理解其内容并已有机会就本人可能产生的任何问题进行讨论。



<u>LI BIN</u>

正楷签字

<u>Li Bin</u>

签　名

<u>0f / 08 / 114</u>

日　期

5

## INDEPENDENT CONTRACTOR SERVICES AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 8th day of May 2014 (the "Effective Date"), between NATION WIDE TRAVEL LLC    ("Contractor") and **YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service** ("Company/Base").

### W I T N E S S E T H:

**WHEREAS**, in accordance with TLC Rule Section 6-04(a), YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is a Base Station duly licensed by the New York City Taxi and Limousine Commission (the "TLC"), under Base #B00248.

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   has submitted to the TLC a business plan for the operation of the Base Station and such plan is in full compliance with TLC Rule Section 6-04(j);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to maintain and enforce rules governing the conduct of affiliated drivers while performing their duties as for-hire-vehicle drivers, in accordance with TLC Rule Section 6-07(c);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to handle all customer complaints involving the conduct of affiliated drivers, in accordance with TLC Rule Section 6-07(k);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to provide the customer who contacts the base for transportation services with an accurate and binding price quote, in accordance with TLC Rule Section 6-07(a);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to ensure that requests for transportation services by a customer are provided only by pre-arrangement through the Base, in accordance with TLC Rule Section 6-07(a);

**WHEREAS**, Contractor is licensed by the TLC in accordance with the TLC Rules and Regulations Section 6-15(a);

**WHEREAS**, Contractor has reviewed the Company's schedule of rates and is aware that such have been filed with the TLC in accordance with Section 6-08(c);

**WHEREAS**, Contractor has reviewed Section 6 of the TLC rules and regulations that governs For-Hire-Vehicles and acknowledges that he/she is in and will remain in compliance with the TLC rules;

**WHEREAS**, in accordance with TLC Rule Section 6-11, the owner of a For-hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base

**WHEREAS**, in accordance with TLC Rule Section 6-08(g); vehicles affiliated with the base or dispatched by the base and drivers of such vehicles are prohibited from accepting street hails.

**WHEREAS**, in accordance with TLC Rule Section 6-12, the owner of a For-Hire Vehicle must provide to the Company and the for-Hire Vehicle must contain the documentation listed in TLC Rule Section 6-12(f)

**WHEREAS**, Contractor is seeking to contract with, utilize the dispatch services of the Company and/or otherwise become affiliated with Company in connection with for-hire transportation;

**WHEREAS**, the parties wish to enter into this Agreement to reflect their mutual understandings and agreements;

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1.  <u>Services.</u>   Contractor and Company shall perform the following services in accordance with the following:

A. Contractor will provide the following Services and perform the following duties:

(a)   Contractor shall have the right and/or option to notify the Company when he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers who may contact the Company to schedule pre-arranged transportation. Such notification by the Contractor shall be by means of two-way radio or other electronic device. Once Contractor exercises his/her option to notify the Company that he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers, Contractor shall have the right to accept any job/trip that is offered/provided to him/her by the Company;

(b)   If a job/trip is transmitted to the Contractor by the Company, the Contractor has the right/option to refuse to accept any job/trip;

(c)   Once the Contractor has opted to accept a job/trip, Contractor shall transport the passenger(s)/customer(s) as per the prearranged reservation provided to the Company by the passenger(s)/customer(s) and transmitted by the Company to the Contractor;

(d)   Once the Contractor provides transportation services to the passenger(s)/customer(s); as per the prearranged reservation provided to the Company, Contractor is responsible for the collection of the fee from the passenger(s)/customer(s).

B. Company will provide the following Services and perform the following duties:

(a)   Company shall serve as a base station (as defined by the Rules of the TLC) and shall seek to obtain customers who seek transportation services via pre-arrangement through the Company;

(b)   Company shall provide the option to Contractor to receive and accept requests for transportation services from customers of the Company. At the option of the Contractor, the Company shall transmit information relative to each job/trip to the Contractor as it was provided to the Company by the customer;

(c)   Company shall provide the Contractor with the option to set his/her own hours and days in which he/she seeks to receive and accept any job/trip that is offered/provided to him/her by the Company;

2. <u>Right to Contract With Others.</u> Contractor retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3. <u>Right to Set Own Schedule.</u>   Contractor has no obligation to provide his/her services to the Company on any particular hours or days or any particular number of hours or days. Contractor retains the right to take vacation and/or cease to provide transportation services at any time.

4. <u>No Right to Control.</u>   The Company shall have no right to control or direct the details, manner or means by which Contractor provide the Services, except as specified by the TLC rules and regulations.

5. <u>Vehicle.</u> Contractor must own and/or rent and/or lease a vehicle that is licensed in accordance with the laws of the State of New York and the Rules of the TLC. Company does not own and shall not provide any vehicle to the Contractor for any purposes whatsoever. Company shall not pay for or reimburse Contractor for any costs associated with the ownership, lease or rental of such vehicle.

6. <u>Expenses.</u> Contractor shall be responsible for his/her own expenses. Such expenses shall include, but are not limited to, the cost of licensing, insurance, maintenance, gas, upkeep. Company will not reimburse Contractor whatsoever for any such expenses associated with the operation of a For-Hire-Vehicle and/or the operation of Contractor's independent business as an affiliated For-Hire-Vehicle driver.

7. <u>Worker's Compensation and Disability Insurance.</u> Contractor may elect to purchase his/her own Worker's Compensation Insurance and/or Disability Insurance. Subject to the relevant provisions of the TLC Regulations, Company is not obligated to provide any Contractor with any such coverage or policy of insurance.

8. <u>Independent Contractor - Not Employee.</u>   Contractor agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

9. <u>Taxes.</u> Contractor acknowledges and agrees that the Company has no responsibility whatsoever for the payment or withholding of any taxes or other obligations that may arise from Contractor providing the transportation services contemplated herein.

10. <u>Collection from Customer.</u>
    a. Contractor shall collect the pre-arranged fare from Customer, plus fees for any additional customer requests, if applicable;
    b. Contractor shall be entitled to collect from the passenger for any tolls or parking fees the Contractor paid in connection with the trip provided to the customer;
    c. Contractor shall be entitled to any gratuities provided in the passenger's discretion

11. Fee Arrangement.   In consideration for the Services Company provides to Contractor, the Contractor agrees to and shall pay Company a weekly fee of $155.00 (5 passengers of sedan) or $180.00 (7 passengers of mini van).

12.  Termination of Agreement. The Parties may terminate this agreement at any time.

13. General Provisions.

(a)   This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b)   If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c)   The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor: NATION WIDE TRAVEL LLC

By: _Li Bin_____
Name: LI, BIN (PRESIDENT)

DATE: __05/08/14__

Yellowstone Transportation, Inc

By: _____
Name: WALLACE XU (MANAGER)

DATE: __5/8/14__

# <u>Acknowledgement and Receipt</u>

**Signature on this receipt acknowledges that you have received and reviewed a copy of Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations**

I certify that I have received and reviewed Chapter 6 of the New York City Taxi And Limousine Commission Rules and Regulations and further understand that, by signing this statement, I am indicating that I have not only read Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations, but that I understand its contents and have had the opportunity to discuss any questions I may have had as of the date indicated below.

LI BIN
_____
Name (Please Print)

Li Pin
_____
Signature

05 / 08 / 14
_____
Date

# EXHIBIT D

保证人协议

**本协议**（"协议"）于 2013 年 6 月 13 日起生效（"生效日期"），缔约方为：PINGAN395 EXPRESS INC（"承包商／车辆拥有方"）和 YELLOWSTONE TRANSPORTATION INC.（"公司／基站"）。

鉴于，根据纽约市出租车管理协会规则及规例第 6-01 条，PINGAN395 EXPRESS INC（"承包商／车辆拥有方"）要求 YELLOWSTONE TRANSPORTATION INC.（"公司／基站"）担任承包商／车辆拥有方的保证人，在获管理协会许可的情况下，将有资格拥有与上述基站相关联的有关车辆。

鉴于，根据纽约市出租车管理协会规则及规例第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等车辆拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联。

鉴于，承包商／车辆拥有方寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式拥有与公司相关联的有关车辆；

鉴于，根据纽约市出租车管理协会规则及规例第 6-12.1(f)条，车辆拥有人除非获得管理协会许可的基站订立的预先安排，否则不得允许其车辆载客出租。

**因此**，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1.服务

　　不可退还的应用／关联费用(Application/Affiliation Fees) 承包商／车辆拥有方将为提供约租运输服务之目的，就拥有**附录 A**中指明的与公司相关联的车辆向公司一次性支付不可退还的 2,000.00 美元费用；

公司将通知纽约市出租车管理协会，承包商／车辆拥有人欲就约租运输将有关车辆与公司相关联，且承包商／车辆拥有人希望公司通过预先安排，为向公司寻求运输服务的客户充当基站（定义见 TLC 规则）。

2.与他人签订合约的权利. 承包商／车辆拥有方受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

24 J

3. <u>独立承包商——非雇员</u>. 承包商／车辆拥有方同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

4. <u>收费安排</u>. 鉴于前述事项，公司不得向承包商／车辆拥有人收取任何其他关联费用，且承包商／车辆拥有人保留向运营与公司相关联车辆的人士收取任何费用的权利。

5. 一般条文.

   (a) 本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

   (b) 如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用。

   (c) 本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。


承包商／车辆拥有方
PINGAN395 EXPRESS INC

签署人： _HONG Jun Hou_　　　　　　　　6/13/13
HOU,HONG JUN　　　　　　　　　　　　　　日期


公司
YELLOWSTONE TRANSPORATION INC.
签署人： _____　　　6/13/13
JULIE WANG　　　　　　　　　　　　　　　日期


牌照# _____

车辆识别号码# 5TDKK3DC8CS257482

TLC 许可证 # : _____

车辆 ： #395

## SPONSOR AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 8th day of June 2013 (the "Effective Date"), between PINGAN395 EXPRESS **INC** ("Contractor/Vehicle Owner") and **Yellowstone Transportation Inc.** ("Company/Base").

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-01, PINGAN395 EXPRESS **INC** ("Contractor/Vehicle Owner") has requested that Yellowstone Transportation Inc. ("Company/Base") act as Contractor/Vehicle Owner's Sponsor who, if licensed by the Commission, will be eligible to have such vehicle affiliated with said Base.

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-11, the owner of a For-Hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such vehicle owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base.

**WHEREAS**, Contractor/Vehicle Owner is seeking to contract with, utilize the dispatch services of the Company and/or otherwise have such vehicle affiliated with Company in connection with For-Hire Transportation;

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-12.1(f), the Vehicle Owner shall not permit his or her vehicle to transport passengers for hire other than through pre-arrangement with a base licensed by the Commission.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1. Services

A. Non-Refundable Application/Affiliation Fees. Contractor/Vehicle Owner will pay Company a non-refundable one-time fee of $2,000.00 in connection with having the vehicle identified in **Exhibit A** become affiliated with Company for purposes of Contractor/Vehicle Owner's provision of For-Hire transportation services;

B. Company will notify the New York City Taxi and Limousine Commission of Contractor/Vehicle Owners' desire to affiliate such vehicle with Company in connection with For-Hire Transportation and desire of Contractor/Vehicle Owner to have Company serve as a base station (as defined by the Rules of the TLC) for customers who seek transportation services via pre-arrangement through the Company;

2. Right to Contract With Others. Contractor/Vehicle Owner retains the right to contract

for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3. <u>Independent Contractor - Not Employee.</u>  Contractor/Vehicle Owner agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

4. <u>Fee Arrangement.</u>  In consideration for the foregoing, Company shall not charge any other affiliation fees to Contractor/Vehicle Owner and Contractor/Vehicle Owner shall retain the right to charge any fees to the persons who operate the vehicle that shall be affiliated with Company.

5. <u>General Provisions.</u>

(a)  This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b)  If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c)  The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.


Contractor/Vehicle Owner
PINGAN395 EXPRESS INC

By: _____          6/13/13
**HOU,HONG JUN (PRESIDENT)**                Date


Company
**Yellowstone Transportation Inc**

By: _____          6/13/2013
**Julie Wang  Manager**                          Date

License Plate #           _____

VIN #:     5TDKK3DC8CS257482

TLC License #:           _____

Car#:                 ____#395_____

$\mathcal{M} \cdot \mathcal{J}$

3

# 独立承包商服务协议

本协议（"协议"）于2013年6月13日起生效（"生效日期"），缔约方为：PINGAN395 EXPRESS **INC**（"承包商"）和 YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service（"公司／基站"）。

## 兹见证：

鉴于，根据纽约市出租车管理协会("TLC")规则第 6-04(a)条，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 是根据 Base #B00248 获 TLC 正式许可的基站；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 已向 TLC 提交一项运营基站的业务计划，且该计划完全符合 TLC 规则第6-04(j)条；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 根据 TLC 规则第6-07(c)条，按照 TLC 的要求维护并强制执行相关规则，该等规则用以监管关联驾驶员在执行约租车驾驶员义务时的行为；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(k)条，按照TLC的要求处理所有涉及关联驾驶员行为的客户投诉；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求向与基站联系以寻求交通运输服务的客户提供准确和具有约束力的报价；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求，保证仅按照基站的预先安排向客户提供其寻求的运输服务；

鉴于，承包商根据 TLC 的规则及规例第6-15(a)条获得 TLC 许可；

鉴于，承包商已审核公司的价格安排，并知悉该价格安排已根据第 6-08(c)条提交予 TLC；

鉴于，承包商已审核 TLC 规则及规例第6条有关监管约租车驾驶员的内容，并确认他／她现已并将继续遵守 TLC 的规则；

鉴于，根据 TLC 规则第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等拥有人须持有有关车辆的现时有效的约租车许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联；

鉴于，根据 TLC 规则第 6-08(g)条，与基站相关联的车辆或基站派遣的车辆及有关车辆的驾驶员禁止接受街头拦车要求；

鉴于，根据 TLC 规则第6-12条，约租车拥有人必须向公司提供 TLC 规则第6-12(f)条所列的文件，且约租车必须拥有该等文件；

鉴于，承包商寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式与公司发生关联；

鉴于，双方有意订立本协议以反映其互相谅解及协定；

因此，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1.   服务.  承包商和公司将按照以下条文执行下列服务：

A. 承包商将提供下列服务并执行以下义务：

(a)   承包商有权及／或选择权在其准备好、愿意、能够及／或希望接受由公司联系以预先安排运输服务的客户提供的工作／行程后，向公司发出通知。承包商须使用对讲机或其他电子设备发出有关通知。一旦承包商行使他／她的选择权，通知公司他／她已准备好、愿意、能够及／或希望接受客户提供的工作／行程，承包商有权接受公司向他／她提供／提出的任何工作／行程；

(b)   如果公司向承包商传达工作／行程，承包商有权利／选择权拒绝接受任何工作／行程；

(c)   一旦承包商选择接受工作／行程，承包商须按照乘客／客户向公司提供的且由公司向承包商传达的预约安排，将该乘客／客户送至预约地点；

(d)   一旦承包商按照向公司提供的预约安排向乘客／客户提供运输服务，承包商应负责从乘客／客户处收取相关费用。

B. 公司将提供下列服务并执行以下义务：

(a)   公司须充当基站（定义见 TLC 规则），并尽力争取通过预先安排向公司寻求运输服务的客户；

(b)   公司须向承包商提供接收和接受公司客户的运输服务请求的选择权。按照承包商的选择，公司应向承包商传达客户向其提供的与各项工作／行程有关的信息；

(c)   公司须在承包商有意接收和接受由公司向其提议／提供的任何工作／行程时，向他／她提供设置适合他／她特有时间和日期的选择权；

2.与他人签订合约的权利.  承包商受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3.设置特有时间安排的权利.  承包商概无任何义务在任何具体时间或日期向公司提供服务，且没有任何具体的服务小时数或天数。承包商保留于任何时间休假及／或终止提供运输服务的权利。

4.无控制权.  公司无权控制或指导承包商提供服务的详细情况、方式或方法，惟 TLC 规则及规例指明者除外。

2

5.车辆. 承包商必须拥有及／或租用及／或租赁一辆根据纽约州法律和 TLC 规则获发许可证的车辆。公司不拥有且无论如何不会以任何目的向承包商提供任何车辆。公司将不会向承包商支付或赔偿与此车辆的所有权、租赁或租用有关的任何费用。

6.费用. 承包商须负责他／她自己产生的费用。此等费用包括但不限于：许可证、保险、保养、汽油和维修费等费用。无论如何，公司将不会向承包商偿付与约租车经营及／或承包商作为关联租用车辆驾驶员的独立业务经营有关的任何费用。

7.工人赔偿及伤残保险. 承包商可选择为他／她自己的工人购买赔偿保险及／或伤残保险。在 TLC 规例相关条文的规限下，公司概无向任何承包商提供任何此等保额或保单的义务。

8.独立承包商——非雇员. 承包商同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

9.税务. 承包商确认及同意，公司概无任何责任支付或扣缴任何税款，亦不承担承包商为提供本协议项下预期的运输服务而可能产生的任何其他义务。

10.从客户处收取费用.
  a. 承包商须从客户处收取事先安排的车费及与任何其他客户要求有关的费用（如适用）；
  b. 承包商有权从乘客处收取承包商支付的任何通行费或停车费（与向客户提供的行程有关）；
  c. 承包商有权收取乘客酌情提供的任何小费。

11.收费安排. 鉴于公司向承包商提供服务，承包商同意并应当向公司按周支付 175.00 美元(七座位车)或 150.00 美元（五座位车）。

12.协议终止. 双方可于任何时间终止本协议。

13.一般条文.

  (a) 本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

  (b) 如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用

3   4.J

　　　　(c)　　本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。

承包商: PINGAN395 EXPRESS **INC**　　　　　　YELLOWSTONE transportation, Inc.

签署人: _HONG JUN HOU_　　　　　　　签署人: _____
姓名: HOU,HONG JUN(总裁)　　　　　　　姓名：JULIE WANG（经理）

# 确认及接受

**签署本接受确认书，即表示您已接受及审核纽约市出租管理协会规则及规例第6章副本**

本人证明，本人已接受及审核纽约市出租管理协会规则及规例第6章；并进一步了解，通过签署本声明，本人表明本人不仅已阅读纽约市出租管理协会规则及规例第6章的内容，而且在截至下文指定日期前，本人理解其内容并已有机会就本人可能产生的任何问题进行讨论。


*Hou HONG JUN*
正楷签字

*Hong JunHou*
签名

*6/13/13*
日期

## INDEPENDENT CONTRACTOR SERVICES AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 6.15 day of June 2013 (the "Effective Date"), between PINGAN395 EXPRESS **INC** ("Contractor") and **YELLOWSTONE Transportation, Inc.** d/b/a **Yes Car Service** ("Company/Base").

## W I T N E S S E T H :

**WHEREAS**, in accordance with TLC Rule Section 6-04(a), YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is a Base Station duly licensed by the New York City Taxi and Limousine Commission (the "TLC"), under Base #B00248.

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   has submitted to the TLC a business plan for the operation of the Base Station and such plan is in full compliance with TLC Rule Section 6-04(j);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to maintain and enforce rules governing the conduct of affiliated drivers while performing their duties as for-hire-vehicle drivers, in accordance with TLC Rule Section 6-07(c);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to handle all customer complaints involving the conduct of affiliated drivers, in accordance with TLC Rule Section 6-07(k);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to provide the customer who contacts the base for transportation services with an accurate and binding price quote, in accordance with TLC Rule Section 6-07(a);

**WHEREAS**, YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to ensure that requests for transportation services by a customer are provided only by pre-arrangement through the Base, in accordance with TLC Rule Section 6-07(a);

**WHEREAS**, Contractor is licensed by the TLC in accordance with the TLC Rules and Regulations Section 6-15(a);

**WHEREAS**, Contractor has reviewed the Company's schedule of rates and is aware that such have been filed with the TLC in accordance with Section 6-08(c);

**WHEREAS**, Contractor has reviewed Section 6 of the TLC rules and regulations that governs For-Hire-Vehicles and acknowledges that he/she is in and will remain in compliance with the TLC rules;

**WHEREAS**, in accordance with TLC Rule Section 6-11, the owner of a For-hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base

M.J

**WHEREAS**, in accordance with TLC Rule Section 6-08(g); vehicles affiliated with the base or dispatched by the base and drivers of such vehicles are prohibited from accepting street hails.

**WHEREAS**, in accordance with TLC Rule Section 6-12, the owner of a For-Hire Vehicle must provide to the Company and the for-Hire Vehicle must contain the documentation listed in TLC Rule Section 6-12(f)

**WHEREAS**, Contractor is seeking to contract with, utilize the dispatch services of the Company and/or otherwise become affiliated with Company in connection with for-hire transportation;

**WHEREAS**, the parties wish to enter into this Agreement to reflect their mutual understandings and agreements;

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1.   <u>Services.</u>   Contractor and Company shall perform the following services in accordance with the following:

A. Contractor will provide the following Services and perform the following duties:

(a)   Contractor shall have the right and/or option to notify the Company when he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers who may contact the Company to schedule pre-arranged transportation. Such notification by the Contractor shall be by means of two-way radio or other electronic device. Once Contractor exercises his/her option to notify the Company that he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers, Contractor shall have the right to accept any job/trip that is offered/provided to him/her by the Company;

(b)   If a job/trip is transmitted to the Contractor by the Company, the Contractor has the right/option to refuse to accept any job/trip;

(c)   Once the Contractor has opted to accept a job/trip, Contractor shall transport the passenger(s)/customer(s) as per the prearranged reservation provided to the Company by the passenger(s)/customer(s) and transmitted by the Company to the Contractor;

(d)   Once the Contractor provides transportation services to the passenger(s)/customer(s); as per the prearranged reservation provided to the Company, Contractor is responsible for the collection of the fee from the passenger(s)/customer(s).

B. Company will provide the following Services and perform the following duties:

(a)   Company shall serve as a base station (as defined by the Rules of the TLC) and shall seek to obtain customers who seek transportation services via pre-arrangement through the Company;

(b)   Company shall provide the option to Contractor to receive and accept requests for transportation services from customers of the Company. At the option of the Contractor, the Company shall transmit information relative to each job/trip to the Contractor as it was provided to the Company by the customer;

H. J

2

(c)     Company shall provide the Contractor with the option to set his/her own hours and days in which he/she seeks to receive and accept any job/trip that is offered/provided to him/her by the Company;

2. Right to Contract With Others. Contractor retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3. Right to Set Own Schedule.   Contractor has no obligation to provide his/her services to the Company on any particular hours or days or any particular number of hours or days. Contractor retains the right to take vacation and/or cease to provide transportation services at any time.

4. No Right to Control.   The Company shall have no right to control or direct the details, manner or means by which Contractor provide the Services, except as specified by the TLC rules and regulations.

5. Vehicle. Contractor must own and/or rent and/or lease a vehicle that is licensed in accordance with the laws of the State of New York and the Rules of the TLC. Company does not own and shall not provide any vehicle to the Contractor for any purposes whatsoever. Company shall not pay for or reimburse Contractor for any costs associated with the ownership, lease or rental of such vehicle.

6. Expenses. Contractor shall be responsible for his/her own expenses. Such expenses shall include, but are not limited to, the cost of licensing, insurance, maintenance, gas, upkeep. Company will not reimburse Contractor whatsoever for any such expenses associated with the operation of a For-Hire-Vehicle and/or the operation of Contractor's independent business as an affiliated For-Hire-Vehicle driver.

7. Worker's Compensation and Disability Insurance. Contractor may elect to purchase his/her own Worker's Compensation Insurance and/or Disability Insurance. Subject to the relevant provisions of the TLC Regulations, Company is not obligated to provide any Contractor with any such coverage or policy of insurance.

8. Independent Contractor - Not Employee.   Contractor agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

9. Taxes. Contractor acknowledges and agrees that the Company has no responsibility whatsoever for the payment or withholding of any taxes or other obligations that may arise from Contractor providing the transportation services contemplated herein.

10. Collection from Customer.
    a.  Contractor shall collect the pre-arranged fare from Customer, plus fees for any additional customer requests, if applicable;
    b.  Contractor shall be entitled to collect from the passenger for any tolls or parking fees the Contractor paid in connection with the trip provided to the customer;
    c.  Contractor shall be entitled to any gratuities provided in the passenger's discretion

3

11. <u>Fee Arrangement.</u>   In consideration for the Services Company provides to Contractor, the Contractor agrees to and shall pay Company a weekly fee of $150.00 (5 passengers of sedan) or $175.00 (7 passengers of mini van).

12.  <u>Termination of Agreement.</u> The Parties may terminate this agreement at any time.

13. <u>General Provisions.</u>

(a)    This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b)    If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c)    The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF,** the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor: PINGAN395 EXPRESS **INC**

By: _Hong Jun Hou_____
Name: HOU,HONG JUN(PRESIDENT)

DATE: _6/13/2013____

YELLOWSTONE Transportation, Inc.

By: _Julie_____
Name: JULIE WANG (MANAGER)

DATE: _6/13/2013____

4

# Acknowledgement and Receipt

**Signature on this receipt acknowledges that you have received and reviewed a copy of Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations**

I certify that I have received and reviewed Chapter 6 of the New York City Taxi And Limousine Commission Rules and Regulations and further understand that, by signing this statement, I am indicating that I have not only read Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations, but that I understand its contents and have had the opportunity to discuss any questions I may have had as of the date indicated below.


_Hou Hong Jun_
Name (Please Print)

_Hong Jun Hou_
Signature

_6 / 13 / 13_
Date

# EXHIBIT E

保证人协议

本协议（"协议"）于 2013 年 1 月 22 日起生效（"生效日期"），缔约方为：
**229YANG EXPRESS INC**（"承包商／车辆拥有方"）和 YELLOWSTONE
TRANSPORTATION INC.（"公司／基站"）。

鉴于，根据纽约市出租车管理协会规则及规例第 6-01 条，**229YANG EXPRESS
INC**（"承包商／车辆拥有方"）要求 YELLOWSTONE TRANSPORTATION INC.
（"公司／基站"）担任承包商／车辆拥有方的保证人，在获管理协会许可的情况
下，将有资格拥有与上述基站相关联的有关车辆。

鉴于，根据纽约市出租车管理协会规则及规例第 6-11 条，约租车拥有人须负责为
上述约租车获取管理协会颁发的许可证，且此等车辆拥有人须持有有关车辆的现时
有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人
士派遣该等车辆，除非上述人士与获许可基站产生关联。

鉴于，承包商／车辆拥有方寻求就约租运输服务与公司订立合同、使用公司的派
遣服务及／或以其他方式拥有与公司相关联的有关车辆；

鉴于，根据纽约市出租车管理协会规则及规例第 6-12.1(f)条，车辆拥有人除非获得
管理协会许可的基站订立的预先安排，否则不得允许其车辆载客出租。

**因此**，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承
包商和公司愿意接受法律约束并特此同意以下事项：

1.服务
　　　不可退还的应用／关联费用(Application/Affiliation Fees) 承包商／车辆拥有
方将为提供约租运输服务之目的，就拥有附录 A 中指明的与公司相关联的车辆向
公司一次性支付不可退还的 2,000.00 美元费用；
　　1. 承包商/车辆拥有方不可在未经公司/基站的书面同意下转让此合约。_WANG_
　　2. 承包商/车辆拥有方必须在签署停止合约书的 90 天之内向公司/基站提出书
　　　面转让申请。公司/基站将在收到此书面申请的 10 天之内于以答复。_WANG_
　　3. 在签署停止合约书的 90 天之后，公司/基站恕不接受任何转让申请。_WANG_

公司将通知纽约市出租车管理协会，承包商／车辆拥有人欲就约租运输将有关车辆
与公司相关联，且承包商／车辆拥有人希望公司通过预先安排，为向公司寻求运输
服务的客户充当基站（定义见 TLC 规则）。

2.<u>与他人签订合约的权利.</u> 承包商／车辆拥有方受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3.<u>独立承包商——非雇员.</u> 承包商／车辆拥有方同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

4. <u>收费安排.</u> 鉴于前述事项，公司不得向承包商／车辆拥有人收取任何其他关联费用，且承包商／车辆拥有人保留向运营与公司相关联车辆的人士收取任何费用的权利。

5. <u>一般条文.</u>

  (a) 本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

  (b) 如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用。

  (c) 本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。


承包商／车辆拥有方
**229YANG EXPRESS INC**

签署人：WANG YANG                          1/22/13
**WANG, YANG**                                    日期


公司
**YELLOWSTONE TRANSPORTATION INC.**
签署人：_____          1/22/2013
**JULIE WANG**                                    日期


2

牌照#　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

车辆识别号码#　　5TDKK3DC3DS292464

TLC 许可证#：　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

车辆：　#229

## INDEPENDENT CONTRACTOR SERVICES AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 22RD day of January 2013 (the "Effective Date"), between **229YANG EXPRESS INC** ("Contractor") and **YELLOWSTONE Transportation, Inc.** d/b/a **Yes Car Service** ("Company/Base").

### W I T N E S S E T H :

**WHEREAS,** in accordance with TLC Rule Section 6-04(a), YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is a Base Station duly licensed by the New York City Taxi and Limousine Commission (the "TLC"), under Base #B00248.

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   has submitted to the TLC a business plan for the operation of the Base Station and such plan is in full compliance with TLC Rule Section 6-04(j);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to maintain and enforce rules governing the conduct of affiliated drivers while performing their duties as for-hire-vehicle drivers, in accordance with TLC Rule Section 6-07(c);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to handle all customer complaints involving the conduct of affiliated drivers, in accordance with TLC Rule Section 6-07(k);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to provide the customer who contacts the base for transportation services with an accurate and binding price quote, in accordance with TLC Rule Section 6-07(a);

**WHEREAS,** YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service   is required by the TLC to ensure that requests for transportation services by a customer are provided only by pre-arrangement through the Base, in accordance with TLC Rule Section 6-07(a);

**WHEREAS,** Contractor is licensed by the TLC in accordance with the TLC Rules and Regulations Section 6-15(a);

**WHEREAS,** Contractor has reviewed the Company's schedule of rates and is aware that such have been filed with the TLC in accordance with Section 6-08(c);

**WHEREAS,** Contractor has reviewed Section 6 of the TLC rules and regulations that governs For-Hire-Vehicles and acknowledges that he/she is in and will remain in compliance with the TLC rules;

**WHEREAS,** in accordance with TLC Rule Section 6-11, the owner of a For-hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base

**WHEREAS**, in accordance with TLC Rule Section 6-08(g); vehicles affiliated with the base or dispatched by the base and drivers of such vehicles are prohibited from accepting street hails.

**WHEREAS**, in accordance with TLC Rule Section 6-12, the owner of a For-Hire Vehicle must provide to the Company and the for-Hire Vehicle must contain the documentation listed in TLC Rule Section 6-12(f)

**WHEREAS**, Contractor is seeking to contract with, utilize the dispatch services of the Company and/or otherwise become affiliated with Company in connection with for-hire transportation;

**WHEREAS**, the parties wish to enter into this Agreement to reflect their mutual understandings and agreements;

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1. <u>Services.</u>   Contractor and Company shall perform the following services in accordance with the following:

A. Contractor will provide the following Services and perform the following duties:

(a)   Contractor shall have the right and/or option to notify the Company when he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers who may contact the Company to schedule pre-arranged transportation. Such notification by the Contractor shall be by means of two-way radio or other electronic device. Once Contractor exercises his/her option to notify the Company that he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers, Contractor shall have the right to accept any job/trip that is offered/provided to him/her by the Company;

(b)   If a job/trip is transmitted to the Contractor by the Company, the Contractor has the right/option to refuse to accept any job/trip;

(c)   Once the Contractor has opted to accept a job/trip, Contractor shall transport the passenger(s)/customer(s) as per the prearranged reservation provided to the Company by the passenger(s)/customer(s) and transmitted by the Company to the Contractor;

(d)   Once the Contractor provides transportation services to the passenger(s)/customer(s); as per the prearranged reservation provided to the Company, Contractor is responsible for the collection of the fee from the passenger(s)/customer(s).

B. Company will provide the following Services and perform the following duties:

(a)   Company shall serve as a base station (as defined by the Rules of the TLC) and shall seek to obtain customers who seek transportation services via pre-arrangement through the Company;

(b)   Company shall provide the option to Contractor to receive and accept requests for transportation services from customers of the Company. At the option of the Contractor, the Company shall transmit information relative to each job/trip to the Contractor as it was provided to the Company by the customer;

    (c)    Company shall provide the Contractor with the option to set his/her own hours and days in which he/she seeks to receive and accept any job/trip that is offered/provided to him/her by the Company;

2. <u>Right to Contract With Others.</u> Contractor retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3. <u>Right to Set Own Schedule.</u>   Contractor has no obligation to provide his/her services to the Company on any particular hours or days or any particular number of hours or days. Contractor retains the right to take vacation and/or cease to provide transportation services at any time.

4. <u>No Right to Control.</u>   The Company shall have no right to control or direct the details, manner or means by which Contractor provide the Services, except as specified by the TLC rules and regulations.

5. <u>Vehicle.</u> Contractor must own and/or rent and/or lease a vehicle that is licensed in accordance with the laws of the State of New York and the Rules of the TLC. Company does not own and shall not provide any vehicle to the Contractor for any purposes whatsoever. Company shall not pay for or reimburse Contractor for any costs associated with the ownership, lease or rental of such vehicle.

6. <u>Expenses.</u> Contractor shall be responsible for his/her own expenses. Such expenses shall include, but are not limited to, the cost of licensing, insurance, maintenance, gas, upkeep. Company will not reimburse Contractor whatsoever for any such expenses associated with the operation of a For-Hire-Vehicle and/or the operation of Contractor's independent business as an affiliated For-Hire-Vehicle driver.

7. <u>Worker's Compensation and Disability Insurance.</u> Contractor may elect to purchase his/her own Worker's Compensation Insurance and/or Disability Insurance. Subject to the relevant provisions of the TLC Regulations, Company is not obligated to provide any Contractor with any such coverage or policy of insurance.

8. <u>Independent Contractor - Not Employee.</u>   Contractor agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

9. <u>Taxes.</u> Contractor acknowledges and agrees that the Company has no responsibility whatsoever for the payment or withholding of any taxes or other obligations that may arise from Contractor providing the transportation services contemplated herein.

10. <u>Collection from Customer.</u>
    a.   Contractor shall collect the pre-arranged fare from Customer, plus fees for any additional customer requests, if applicable;
    b.   Contractor shall be entitled to collect from the passenger for any tolls or parking fees the Contractor paid in connection with the trip provided to the customer;
    c.   Contractor shall be entitled to any gratuities provided in the passenger's discretion

11. <u>Fee Arrangement.</u>   In consideration for the Services Company provides to Contractor, the Contractor agrees to and shall pay Company a weekly fee of $150.00 (5 passengers of sedan) or $175.00 (7 passengers of mini van).

12. <u>Termination of Agreement.</u> The Parties may terminate this agreement at any time.

13. <u>General Provisions.</u>

   (a)   This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

   (b)   If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

   (c)   The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor: **229YANG EXPRESS INC**

By: _VVANG YANG_____
   Name: WANG, YANG(OWNER)

DATE: _1/22/13___

YELLOWSTONE Transportation, Inc.

By: _Julie_____
   Name: JULIE WANG (MANAGER)

DATE: _1/22/2013___

# Acknowledgement and Receipt

**Signature on this receipt acknowledges that you have received and reviewed a copy of Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations**

I certify that I have received and reviewed Chapter 6 of the New York City Taxi And Limousine Commission Rules and Regulations and further understand that, by signing this statement, I am indicating that I have not only read Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations, but that I understand its contents and have had the opportunity to discuss any questions I may have had as of the date indicated below.

WAIVG  YAIVG
_____
Name (Please Print)

WAIVG  YbIVG
_____
Signature

1/22/13
_____
Date

## SPONSOR AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 22st day of January 2013 (the "Effective Date"), between 229YANG **EXPRESS INC** ("Contractor/Vehicle Owner") and **Yellowstone Transportation Inc.** ("Company/Base").

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-01, **229YANG EXPRESS INC** ("Contractor/Vehicle Owner") has requested that Yellowstone Transportation Inc. ("Company/Base") act as Contractor/Vehicle Owner's Sponsor who, if licensed by the Commission, will be eligible to have such vehicle affiliated with said Base.

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-11, the owner of a For-Hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such vehicle owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base.

**WHEREAS**, Contractor/Vehicle Owner is seeking to contract with, utilize the dispatch services of the Company and/or otherwise have such vehicle affiliated with Company in connection with For-Hire Transportation;

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-12.1(f), the Vehicle Owner shall not permit his or her vehicle to transport passengers for hire other than through pre-arrangement with a base licensed by the Commission.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

    1. <u>Services</u>

  A. <u>Non-Refundable Application/Affiliation Fees</u>. Contractor/Vehicle Owner will pay Company a non-refundable one-time fee of $2,000.00 in connection with having the vehicle identified in **Exhibit A** become affiliated with Company for purposes of Contractor/Vehicle Owner's provision of For-Hire transportation services;

    1. Contractor/vehicle owner can not transfer this agreement without the written consent of company/Base. *WAIVE*
    2. Contractor/vehicle owner must submit the written request for transfer within 90 day to company/Base, start from the date when termination agreement is executed. The company/Base must respond to the same request within 10 days *WAIVE*
    3. The company/Base will not accept any transfer request once 90day is passed. *WAIVE*

  B. Company will notify the New York City Taxi and Limousine Commission of Contractor/Vehicle Owners' desire to affiliate such vehicle with Company in connection with For-Hire Transportation and desire of Contractor/Vehicle Owner to have Company serve as a

base station (as defined by the Rules of the TLC) for customers who seek transportation services via pre-arrangement through the Company;

2.Right to Contract With Others. Contractor/Vehicle Owner retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3.Independent Contractor - Not Employee.  Contractor/Vehicle Owner agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

4. Fee Arrangement.  In consideration for the foregoing, Company shall not charge any other affiliation fees to Contractor/Vehicle Owner and Contractor/Vehicle Owner shall retain the right to charge any fees to the persons who operate the vehicle that shall be affiliated with Company.

5. General Provisions.

(a)  This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b)  If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c)  The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor/Vehicle Owner
229YANG EXPRESS INC

By: WANG YANG

**WANG, YANG(PRESIDENT)**

1/22/13

Date

Company
**Yellowstone Transportation Inc**

2

By: _____          ___1/22/2013___
**Julie Wang   Manager**                 Date

License Plate #          _____

VIN #:     5TDKK3DC3DS292464

TLC License #:           _____

Car#:               ____#229_____

3

## 独立承包商服务协议

本协议（"协议"）于 2013 年 1 月 22 日起生效（"生效日期"），缔约方为：**229YANG EXPRESS INC**（"承包商"）和 YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service（"公司／基站"）。

### 兹见证：

鉴于，根据纽约市出租车管理协会("TLC")规则第 6-04(a) 条，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 是根据 Base #B00248 获 TLC 正式许可的基站；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 已向 TLC 提交一项运营基站的业务计划，且该计划完全符合 TLC 规则第 6-04(j)条；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service 根据 TLC 规则第 6-07(c)条，按照 TLC 的要求维护并强制执行相关规则，该等规则用以监管关联驾驶员在执行约租车驾驶员义务时的行为；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(k)条，按照TLC的要求处理所有涉及关联驾驶员行为的客户投诉；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求向与基站联系以寻求交通运输服务的客户提供准确和具有约束力的报价；

鉴于，YELLOWSTONE Transportation, Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求，保证仅按照基站的预先安排向客户提供其寻求的运输服务；

鉴于，承包商根据 TLC 的规则及规例第 6-15(a)条获得 TLC 许可；

鉴于，承包商已审核公司的价格安排，并知悉该价格安排已根据第 6-08(c)条提交予TLC；

鉴于，承包商已审核 TLC 规则及规例第 6 条有关监管约租车驾驶员的内容，并确认他／她现已并将继续遵守 TLC 的规则；

鉴于，根据 TLC 规则第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联；

鉴于，根据 TLC 规则第 6-08(g)条，与基站相关联的车辆或基站派遣的车辆及有关车辆的驾驶员禁止接受街头拦车要求；

鉴于，根据 TLC 规则第 6-12 条，约租车拥有人必须向公司提供 TLC 规则第 6-12(f)条所列的文件，且约租车必须拥有该等文件；

鉴于，承包商寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式与公司发生关联；

鉴于，双方有意订立本协议以反映其互相谅解及协定；

因此，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1.　**服务.**　承包商和公司将按照以下条文执行下列服务：

A. 承包商将提供下列服务并执行以下义务：

(a)　承包商有权及／或选择权在其准备好、愿意、能够及／或希望接受由公司联系以预先安排运输服务的客户提供的工作／行程后，向公司发出通知。承包商须使用对讲机或其他电子设备发出有关通知。一旦承包商行使他／她的选择权，通知公司他／她已准备好、愿意、能够及／或希望接受客户提供的工作／行程，承包商有权接受公司向他／她提供／提出的任何工作／行程；

(b)　如果公司向承包商传达工作／行程，承包商有权利／选择权拒绝接受任何工作／行程；

(c)　一旦承包商选择接受工作／行程，承包商须按照乘客／客户向公司提供的且由公司向承包商传达的预约安排，将该乘客／客户送至预约地点；

(d)　一旦承包商按照向公司提供的预约安排向乘客／客户提供运输服务，承包商应负责从乘客／客户处收取相关费用。

B. 公司将提供下列服务并执行以下义务：

(a)　公司须充当基站（定义见 TLC 规则），并尽力争取通过预先安排向公司寻求运输服务的客户；

(b)　公司须向承包商提供接收和接受公司客户的运输服务请求的选择权。按照承包商的选择，公司应向承包商传达客户向其提供的与各项工作／行程有关的信息；

(c)　公司须在承包商有意接收和接受由公司向其提议／提供的任何工作／行程时，向他／她提供设置适合他／她特有时间和日期的选择权；

2.与他人签订合约的权利.　承包商受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3.设置特有时间安排的权利.　承包商概无任何义务在任何具体时间或日期向公司提供服务，且没有任何具体的服务小时数或天数。承包商保留于任何时间休假及／或终止提供运输服务的权利。

4.无控制权.　公司无权控制或指导承包商提供服务的详细情况、方式或方法，惟 TLC 规则及规例指明者除外。

5.车辆. 承包商必须拥有及／或租用及／或租赁一辆根据纽约州法律和 TLC 规则获发许可证的车辆。公司不拥有且无论如何不会以任何目的向承包商提供任何车辆。公司将不会向承包商支付或赔偿与此车辆的所有权、租赁或租用有关的任何费用。

6.费用. 承包商须负责他／她自己产生的费用。此等费用包括但不限于：许可证、保险、保养、汽油和维修费等费用。无论如何，公司将不会向承包商偿付与约租车经营及／或承包商作为关联租用车辆驾驶员的独立业务经营有关的任何费用。

7.工人赔偿及伤残保险. 承包商可选择为他／她自己的工人购买赔偿保险及／或伤残保险。在 TLC 规例相关条文的规限下，公司概无向任何承包商提供任何此等保额或保单的义务。

8.独立承包商——非雇员. 承包商同意及确认，他／她乃独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

9.税务. 承包商确认及同意，公司概无任何责任支付或扣缴任何税款，亦不承担承包商为提供本协议项下预期的运输服务而可能产生的任何其他义务。

10.从客户处收取费用.
   a. 承包商须从客户处收取事先安排的车费及与任何其他客户要求有关的费用（如适用）；
   b. 承包商有权从乘客处收取承包商支付的任何通行费或停车费（与向客户提供的行程有关）；
   c. 承包商有权收取乘客酌情提供的任何小费。

11.收费安排. 鉴于公司向承包商提供服务，承包商同意并应当向公司按周支付 175.00 美元(七座位车) 或 150.00 美元（五座位车）。

12.协议终止. 双方可于任何时间终止本协议。

13.一般条文.

   (a)  本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

   (b)  如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用

      (c)     本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。

承包商: **229YANG EXPRESS INC**                    YELLOWSTONE transportation, Inc.

签署人: WANG YANG _____                    签署人: _____
姓名: WANG, YANG(总裁)                              姓名: JULIE WANG（经理）

4

# 确认及接受

**签署本接受确认书，即表示您已接受及审核纽约市出租管理协会规则及规例第6章副本**

本人证明，本人已接受及审核纽约市出租管理协会规则及规例第6章；并进一步了解，通过签署本声明，本人表明本人不仅已阅读纽约市出租管理协会规则及规例第6章的内容，而且在截至下文指定日期前，本人理解其内容并已有机会就本人可能产生的任何问题进行讨论。

_WANG YANG_

正楷签字

签名 _WANG YANG_

日期 _1/22/13_

# EXHIBIT F

## Transfer Agreement

Part A-Seller: GAO, WEI DONG

Part B-Buyer: ZHANG, DESHENG

It is agreed that Part A sells yes car service (car number: #287) to Part B. The price is $1200. This is an arrangement between Part A and Part B only; no other Parties are involved.

If Part B wants to re-sell, Part A must help in the re-sell process, such as providing all the needed documents to complete the re-sell.

GAO, WEI DONG
Part A-Seller

Date 11/08 - 2013

ZHANG, DESHENG
Part B-Buyer

Date 11/8/2013

Notary Public

Date

STATE OF NEW YORK )
COUNTY OF QUEENS ) SS:
Sworn to before me on this 8 day of NOV 20 13.

Notary Public

HONG WU JIANG
Notary Public, State of New York
No. 01HO6189625
Qualified in Kings County
Certificate Filed in Queens County
Commission Expires June 30, 2016

## 独立承包商服务协议

　　本协议（"协议"）于 2009 年 8 月 12 日起生效（"生效日期"），缔约方为 GAO, WEI, DONG（"承包商"）和 Sunline Transportation Inc. d/b/a Yes Car Service（"公司／基站"）。

### 兹见证：

　　鉴于，根据纽约市出租车管理协会("TLC")规则第 6-04(a)条，Sunline Transportation Inc. d/b/a Yes Car Service 是根据 Base #B00248 获 TLC 正式许可的基站；

　　鉴于，Sunline Transportation Inc. d/b/a Yes Car Service 已向 TLC 提交一项运营基站的业务计划，且该计划完全符合 TLC 规则第 6-04(j)条；

　　鉴于，Sunline Transportation Inc. d/b/a Yes Car Service 根据 TLC 规则第 6-07(c)条，按照 TLC 的要求维护并强制执行相关规则，该等规则用以监管关联驾驶员在执行约租车驾驶员义务时的行为；

　　鉴于，Sunline Transportation Inc. d/b/a Yes Car Service根据TLC规则第6-07(k)条，按照TLC的要求处理所有涉及关联驾驶员行为的客户投诉；

　　鉴于，Sunline Transportation Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求向与基站联系以寻求交通运输服务的客户提供准确和具有约束力的报价；

　　鉴于，Sunline Transportation Inc. d/b/a Yes Car Service根据TLC规则第6-07(a)条，按照TLC的要求，保证仅按照基站的预先安排向客户提供其寻求的运输服务；

　　鉴于，承包商根据 TLC 的规则及规例第 6-15(a)条获得 TLC 许可；

　　鉴于，承包商已审核公司的价格安排，并知悉该价格安排已根据第 6-08(c)条提交予 TLC；

　　鉴于，承包商已审核 TLC 规则及规例第 6 条有关监管约租车驾驶员的内容，并确认他／她现已并将继续遵守 TLC 的规则；

　　鉴于，根据 TLC 规则第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联；

　　鉴于，根据 TLC 规则第 6-08(g)条，与基站相关联的车辆或基站派遣的车辆及有关车辆的驾驶员禁止接受街头拦车要求；

　　鉴于，根据 TLC 规则第 6-12 条，约租车拥有人必须向公司提供 TLC 规则第 6-12(f)条所列的文件，且约租车必须拥有该等文件；

鉴于，承包商寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式与公司发生关联；

鉴于，双方有意订立本协议以反映其互相谅解及协定；

因此，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：

1.　　<u>服务.</u>　承包商和公司将按照以下条文执行下列服务：

A. 承包商将提供下列服务并执行以下义务：

(a)　　承包商有权及／或选择权在其准备好、愿意、能够及／或希望接受由与公司联系以预先安排运输服务的客户提供的工作／行程后，向公司发出通知。承包商须使用对讲机或其他电子设备发出有关通知。一旦承包商行使他／她的选择权，通知公司他／她已准备好、愿意、能够及／或希望接受客户提供的工作／行程，承包商有权接受公司向他／她提供／提出的任何工作／行程；

(b)　　如果公司向承包商传达工作／行程，承包商有权利／选择权拒绝接受任何工作／行程；

(c)　　一旦承包商选择接受工作／行程，承包商须按照乘客／客户向公司提供的且由公司向承包商传达的预约安排，将该乘客／客户送至预约地点；

(d)　　一旦承包商按照向公司提供的预约安排向乘客／客户提供运输服务，承包商应负责从乘客／客户处收取相关费用。

B. 公司将提供下列服务并执行以下义务：

(a)　　公司须充当基站（定义见 TLC 规则），并尽力争取通过预先安排向公司寻求运输服务的客户；

(b)　　公司须向承包商提供接收和接受公司客户的运输服务请求的选择权。按照承包商的选择，公司应向承包商传达客户向其提供的与各项工作／行程有关的信息；

(c)　　公司须在承包商有意接收和接受由公司向其提议／提供的任何工作／行程时，向他／她提供设置适合他／她特有时间和日期的选择权；

2.<u>与他人签订合约的权利.</u> 承包商受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3.<u>设置特有时间安排的权利.</u> 承包商概无任何义务在任何具体时间或日期向公司提供服务，且没有任何具体的服务小时数或天数。承包商保留于任何时间休假及／或终止提供运输服务的权利。

4.<u>无控制权.</u>　公司无权控制或指导承包商提供服务的详细情况、方式或方法，惟 TLC 规则及规例指明者除外。

2

5.车辆. 承包商必须拥有及／或租用及／或租赁一辆根据纽约州法律和 TLC 规则获发许可证的车辆。公司不拥有且无论如何不会以任何目的向承包商提供任何车辆。公司将不会向承包商支付或赔偿与此车辆的所有权、租赁或租用有关的任何费用。

6.费用. 承包商须负责他／她自己产生的费用。此等费用包括但不限于：许可证、保险、保养、汽油和维修费等费用。无论如何，公司将不会向承包商偿付与约租车经营及／或承包商作为关联租用车辆驾驶员的独立业务经营有关的任何费用。

7.工人赔偿及伤残保险. 承包商可选择为他／她自己的工人购买赔偿保险及／或伤残保险。在 TLC 规例相关条文的规限下，公司概无向任何承包商提供任何此等保额或保单的义务。

8.独立承包商——非雇员. 承包商同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

9.税务. 承包商确认及同意，公司概无任何责任支付或扣缴任何税款，亦不承担承包商为提供本协议项下预期的运输服务而可能产生的任何其他义务。

10.从客户处收取费用.
   a. 承包商须从客户处收取事先安排的车费及与任何其他客户要求有关的费用（如适用）；
   b. 承包商有权从乘客处收取承包商支付的任何通行费或停车费（与向客户提供的行程有关）；
   c. 承包商有权收取乘客酌情提供的任何小费。

11.收费安排. 鉴于公司向承包商提供服务，承包商同意并应当向公司按周支付 175.00 美元(七座位车）或 150.00 美元（五座位车）。

12.协议终止. 双方可于任何时间终止本协议。

13.一般条文.

   (a)    本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

   (b)    如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用

3

        (c)      本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证**，双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。

承包商：GAO, WEI, DONG               Sunline Transportation Inc.

签署人：_GAO, Wei Dong_          签署人：_____

姓   名：GAO, WEI, DONG            姓   名：JULIE WANG（经理）

日   期：_8/12/2009_               日   期：_8/12/2009_

<u>确认及接受</u>

**签署本接受确认书，即表示您已接受及审核纽约市出租管理协会规则及规例第6章副本**

本人证明，本人已接受及审核纽约市出租管理协会规则及规例第6章；并进一步了解，通过签署本声明，本人表明本人不仅已阅读纽约市出租管理协会规则及规例第6章的内容，而且在截至下文指定日期前，本人理解其内容并已有机会就本人可能产生的任何问题进行讨论。

Gao, Wei Dong
_____
正楷签字

Gao, Wei Dong
_____
签　　名

8/12/2009
_____
日　　期

5

保证人协议

本协议（"协议"）于 2009 年 8 月 12 日起生效（"生效日期"），缔约方为：GAO, WEI, DONG（"承包商／车辆拥有方"）和 SUNLINE TRANSPORTATION INC.（"公司／基站"）。

鉴于，根据纽约市出租车管理协会规则及规例第 6-01 条，GAO, WEI, DONG（"承包商／车辆拥有方"）要求 SUNLINE TRANSPORTATION INC.（"公司／基站"）担任承包商／车辆拥有方的保证人，在获管理协会许可的情况下，将有资格拥有与上述基站相关联的有关车辆。

鉴于，根据纽约市出租车管理协会规则及规例第 6-11 条，约租车拥有人须负责为上述约租车获取管理协会颁发的许可证，且此等车辆拥有人须持有有关车辆的现时有效的约租许可证，否则不允许派遣车辆。此外，约租车的拥有人不得允许另外人士派遣该等车辆，除非上述人士与获许可基站产生关联。

鉴于，承包商／车辆拥有方寻求就约租运输服务与公司订立合同、使用公司的派遣服务及／或以其他方式拥有与公司相关联的有关车辆；

鉴于，根据纽约市出租车管理协会规则及规例第 6-12.1(f)条，车辆拥有人除非获得管理协会许可的基站订立的预先安排，否则不得允许其车辆载客出租。

因此，鉴于前述事项作为本协议及下文中列明之相互契诺的不可分割之部分，承包商和公司愿意接受法律约束并特此同意以下事项：


1.服务

　　　　不可退还的应用／关联费用(Application/Affiliation Fees) 承包商／车辆拥有方将为提供约租运输服务之目的，就拥有**附录A**中指明的与公司相关联的车辆向公司一次性支付不可退还的 1,500.00 美元费用；

公司将通知纽约市出租车管理协会，承包商／车辆拥有人欲就约租运输将有关车辆与公司相关联，且承包商／车辆拥有人希望公司通过预先安排，为向公司寻求运输服务的客户充当基站（定义见 TLC 规则）。


2.　与他人签订合约的权利. 承包商／车辆拥有方受到 TLC 规则及规例下的承包商义务的规限，在此前提下承包商保留与其他企业或个人签订类似服务合同的权利。

3. **独立承包商——非雇员.** 承包商／车辆拥有方同意及确认，他／她乃是独立承包商，不得因任何目的视作公司的雇员、合伙、合资企业或代理。

4. **收费安排.** 鉴于前述事项，公司不得向承包商／车辆拥有人收取任何其他关联费用，且承包商／车辆拥有人保留向运营与公司相关联车辆的人士收取任何费用的权利。

5. **一般条文.**

    (a) 本协议包含双方达成的完整协议。本协议优先于双方就标的事项达成的所有先前协议及谅解（无论书面还是口头）。除非本协议双方签署书面协议，否则不得更改或修订本协议。

    (b) 如果发现本协议的一段或多段或部分无法强制执行、非法、有悖于公共政策或以任何其他方式宣告无法在具有司法管辖权的法院强制执行，则除上述确定无法强制执行、非法或有悖于公共政策的段落或部分外，本协议仍具有十足效力及作用。

    (c) 本协议的解释、释义和执行，以及所有在本协议下进行或与之有关的交易须受纽约州法律监管。

**兹见证，** 双方已阅读并完全理解本协议，本协议于文首之日起签立并生效。

承包商／车辆拥有方
GAO, WEI, DONG
签署人：_____Gao, Wei Dong_____         _____8/12/2009_____
GAO, WEI, DONG                      日期

公司
SUNLINE TRANSPORTATION INC.
签署人：_____Sunline_____         _____8/12/2009_____
JULIE WANG                      日期

牌照#     548 899 485

车辆识别号码#  1LNHM82W66Y628030
TLC 许可证#：5275801

车辆：  #287

## SPONSOR AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 12th day of August 2009 (the "Effective Date"), between GAO, WEI, DONG ("Contractor/Vehicle Owner") and **Sunline Transportation Inc.** ("Company/Base").

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-01, GAO, WEI, DONG ("Contractor/Vehicle Owner") has requested that Sunline Transportation Inc. ("Company/Base") act as Contractor/Vehicle Owner's Sponsor who, if licensed by the Commission, will be eligible to have such vehicle affiliated with said Base.

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-11, the owner of a For-Hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such vehicle owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base.

**WHEREAS**, Contractor/Vehicle Owner is seeking to contract with, utilize the dispatch services of the Company and/or otherwise have such vehicle affiliated with Company in connection with For-Hire Transportation;

**WHEREAS**, in accordance with New York City Taxi and Limousine Commission Rules and Regulations Section 6-12.1(f), the Vehicle Owner shall not permit his or her vehicle to transport passengers for hire other than through pre-arrangement with a base licensed by the Commission.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1. Services

A. Non-Refundable Application/Affiliation Fees. Contractor/Vehicle Owner will pay Company a non-refundable one-time fee of $1,500.00 in connection with having the vehicle identified in **Exhibit A** become affiliated with Company for purposes of Contractor/Vehicle Owner's provision of For-Hire transportation services;

B. Company will notify the New York City Taxi and Limousine Commission of Contractor/Vehicle Owners' desire to affiliate such vehicle with Company in connection with For-Hire Transportation and desire of Contractor/Vehicle Owner to have Company serve as a base station (as defined by the Rules of the TLC) for customers who seek transportation services via pre-arrangement through the Company;

2. Right to Contract With Others. Contractor/Vehicle Owner retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3.Independent Contractor - Not Employee.   Contractor/Vehicle Owner agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

4. Fee Arrangement.   In consideration for the foregoing, Company shall not charge any other affiliation fees to Contractor/Vehicle Owner and Contractor/Vehicle Owner shall retain the right to charge any fees to the persons who operate the vehicle that shall be affiliated with Company.

5. General Provisions.

(a)  This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b)  If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c)  The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor/Vehicle Owner
  **GAO, WEI, DONG**

By: _Gao, Wei Dong_          _8/12/2009_
  **GAO, WEI , DONG**                    Date

Company
  **Sunline Transportation Inc**

By: _____          _8/12/2009_
  **Julie Wang Manager**                    Date

License Plate #      548 899 485

VIN #:   1LNHM82W66Y628030

TLC License #:   5275801

Car#:   287

2

## INDEPENDENT CONTRACTOR SERVICES AGREEMENT

**THIS AGREEMENT** (the "Agreement") is effective as of the 12th day of August 2009 (the "Effective Date"), between GAO, WEI, DONG ("Contractor") and **Sunline Transportation Inc.** d/b/a **Yes Car Service** ("Company/Base").

### W I T N E S S E T H:

**WHEREAS**, in accordance with TLC Rule Section 6-04(a), Sunline Transportation Inc. d/b/a Yes Car Service is a Base Station duly licensed by the New York City Taxi and Limousine Commission (the "TLC"), under Base #B00248.

**WHEREAS**, Sunline Transportation Inc. d/b/a Yes Car Service has submitted to the TLC a business plan for the operation of the Base Station and such plan is in full compliance with TLC Rule Section 6-04(j);

**WHEREAS**, Sunline Transportation Inc. d/b/a Yes Car Service is required by the TLC to maintain and enforce rules governing the conduct of affiliated drivers while performing their duties as for-hire-vehicle drivers, in accordance with TLC Rule Section 6-07(c);

**WHEREAS**, Sunline Transportation Inc. d/b/a Yes Car Service is required by the TLC to handle all customer complaints involving the conduct of affiliated drivers, in accordance with TLC Rule Section 6-07(k);

**WHEREAS**, Sunline Transportation Inc. d/b/a Yes Car Service is required by the TLC to provide the customer who contacts the base for transportation services with an accurate and binding price quote, in accordance with TLC Rule Section 6-07(a);

**WHEREAS**, Sunline Transportation Inc. d/b/a Yes Car Service is required by the TLC to ensure that requests for transportation services by a customer are provided only by pre-arrangement through the Base, in accordance with TLC Rule Section 6-07(a);

**WHEREAS**, Contractor is licensed by the TLC in accordance with the TLC Rules and Regulations Section 6-15(a);

**WHEREAS**, Contractor has reviewed the Company's schedule of rates and is aware that such have been filed with the TLC in accordance with Section 6-08(c);

**WHEREAS**, Contractor has reviewed Section 6 of the TLC rules and regulations that governs For-Hire-Vehicles and acknowledges that he/she is in and will remain in compliance with the TLC rules;

**WHEREAS**, in accordance with TLC Rule Section 6-11, the owner of a For-hire Vehicle shall be responsible for having said for-hire vehicle licensed by the Commission and such owner shall not allow a vehicle to be dispatched unless the owner holds a current, valid for-hire vehicle permit for such vehicle. Additionally, the owner of a for-hire vehicle shall not permit another person to dispatch such vehicle unless it is affiliated with a licensed base

**WHEREAS**, in accordance with TLC Rule Section 6-08(g); vehicles affiliated with the base or dispatched by the base and drivers of such vehicles are prohibited from accepting street hails.

**WHEREAS**, in accordance with TLC Rule Section 6-12, the owner of a For-Hire Vehicle must provide to the Company and the for-hire Vehicle must contain the documentation listed in TLC Rule Section 6-12(f)

**WHEREAS**, Contractor is seeking to contract with, utilize the dispatch services of the Company and/or otherwise become affiliated with Company in connection with for-hire transportation;

**WHEREAS**, the parties wish to enter into this Agreement to reflect their mutual understandings and agreements;

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are hereby made an integral part hereof and of the mutual covenants hereinafter set forth, Contractor and Company, intending to be legally bound, hereby agree as follows:

1. <u>Services.</u>   Contractor and Company shall perform the following services in accordance with the following:

A. Contractor will provide the following Services and perform the following duties:

(a)   Contractor shall have the right and/or option to notify the Company when he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers who may contact the Company to schedule pre-arranged transportation. Such notification by the Contractor shall be by means of two-way radio or other electronic device. Once Contractor exercises his/her option to notify the Company that he/she is ready, willing, able and/or desirous of receiving job/trip offers from customers, Contractor shall have the right to accept any job/trip that is offered/provided to him/her by the Company;

(b)   If a job/trip is transmitted to the Contractor by the Company, the Contractor has the right/option to refuse to accept any job/trip;

(c)   Once the Contractor has opted to accept a job/trip, Contractor shall transport the passenger(s)/customer(s) as per the prearranged reservation provided to the Company by the passenger(s)/customer(s) and transmitted by the Company to the Contractor;

(d)   Once the Contractor provides transportation services to the passenger(s)/customer(s); as per the prearranged reservation provided to the Company, Contractor is responsible for the collection of the fee from the passenger(s)/customer(s).

B. Company will provide the following Services and perform the following duties:

(a)   Company shall serve as a base station (as defined by the Rules of the TLC) and shall seek to obtain customers who seek transportation services via pre-arrangement through the Company;

(b)   Company shall provide the option to Contractor to receive and accept requests for transportation services from customers of the Company. At the option of the Contractor, the Company shall transmit information relative to each job/trip to the Contractor as it was provided to the Company by the customer;

(c)   Company shall provide the Contractor with the option to set his/her own hours and days in which he/she seeks to receive and accept any job/trip that is offered/provided to him/her by the Company;

2

2.<u>Right to Contract With Others.</u> Contractor retains the right to contract for similar services with other businesses or individuals, subject to Contractor's obligations under the TLC Rules and regulations.

3.<u>Right to Set Own Schedule.</u>   Contractor has no obligation to provide his/her services to the Company on any particular hours or days or any particular number of hours or days. Contractor retains the right to take vacation and/or cease to provide transportation services at any time.

4.<u>No Right to Control.</u>   The Company shall have no right to control or direct the details, manner or means by which Contractor provide the Services, except as specified by the TLC rules and regulations.

5.<u>Vehicle.</u> Contractor must own and/or rent and/or lease a vehicle that is licensed in accordance with the laws of the State of New York and the Rules of the TLC. Company does not own and shall not provide any vehicle to the Contractor for any purposes whatsoever. Company shall not pay for or reimburse Contractor for any costs associated with the ownership, lease or rental of such vehicle.

6.<u>Expenses.</u> Contractor shall be responsible for his/her own expenses. Such expenses shall include, but are not limited to, the cost of licensing, insurance, maintenance, gas, upkeep. Company will not reimburse Contractor whatsoever for any such expenses associated with the operation of a For-Hire-Vehicle and/or the operation of Contractor's independent business as an affiliated For-Hire-Vehicle driver.

7.<u>Worker's Compensation and Disability Insurance.</u> Contractor may elect to purchase his/her own Worker's Compensation Insurance and/or Disability Insurance. Subject to the relevant provisions of the TLC Regulations, Company is not obligated to provide any Contractor with any such coverage or policy of insurance.

8.<u>Independent Contractor - Not Employee.</u>   Contractor agrees and acknowledges that he/she is an independent contractor and shall not be considered an employee, partner, joint venture or agent of the Company for any purpose whatsoever.

9.<u>Taxes.</u> Contractor acknowledges and agrees that the Company has no responsibility whatsoever for the payment or withholding of any taxes or other obligations that may arise from Contractor providing the transportation services contemplated herein.

10.<u>Collection from Customer.</u>
    a.  Contractor shall collect the pre-arranged fare from Customer, plus fees for any additional customer requests, if applicable;
    b.  Contractor shall be entitled to collect from the passenger for any tolls or parking fees the Contractor paid in connection with the trip provided to the customer;
    c.  Contractor shall be entitled to any gratuities provided in the passenger's discretion

11. Fee Arrangement.   In consideration for the Services Company provides to Contractor, the Contractor agrees to and shall pay Company a weekly fee of $150.00 (5 passengers of sedan) or $175.00 (7 passengers of mini van).

12.  Termination of Agreement. The Parties may terminate this agreement at any time.

13. General Provisions.

(a)   This Agreement encompasses the entire agreement of the parties. This Agreement supersedes all prior agreements and understandings (whether written or oral) between the parties with respect to the subject matter hereof. This Agreement may not be modified or amended except by written agreement signed by the parties hereto.

(b)   If one or more of the paragraphs or parts hereof are found to be unenforceable, illegal, contrary to public policy or are in some other manner declared to be unenforceable by a court of competent jurisdiction, this Agreement shall remain in full force and effect except for that paragraph or portion thereof determined to be unenforceable, illegal or contrary to public policy.

(c)   The construction, interpretation and performance of this Agreement, and all transactions under or related to it, shall be governed by the laws of the State of New York.

**IN WITNESS WHEREOF**, the parties have read and fully understood this Agreement and have executed this Agreement effective as of the day and year first above written.

Contractor:

GAO, WEI, DONG                                    Sunline Transportation Inc

By: _____            By: _____
Name: GAO, WEI, DONG (MANAGER)        Name: JULIE WANG (MANAGER)

DATE: _____8/12/2008_____            DATE: _____8/12/2008_____

4

# Acknowledgement and Receipt

**Signature on this receipt acknowledges that you have received and reviewed a copy of Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations**

I certify that I have received and reviewed Chapter 6 of the New York City Taxi And Limousine Commission Rules and Regulations and further understand that, by signing this statement, I am indicating that I have not only read Chapter 6 of the New York City Taxi and Limousine Commission Rules and Regulations, but that I understand its contents and have had the opportunity to discuss any questions I may have had as of the date indicated below.

_Gao, Wei Dong_
Name (Please Print)

_Gao, wei Dong_
Signature

_8/12/2009_
Date